Robin GEIGER, Individually and d/b/a Mak'n Magic, Appellant,

v.

CITY OF EAGAN; Leo Murphy, Mayor of the City of Eagan; Mark Parranto, Councilman for the City of Eagan; Tom Egan, Councilman for the City of Eagan; Jim Smith, Councilman for the City of Eagan; Ted Wachter, Councilman for the City of Eagan; Martin Des-Lauriers, Chief of Police for the City of Eagan, Appellees.

No. 79–1831.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 7, 1979.

Decided March 19, 1980.

Michael L. Pritzker, Stroup, Goldstein, Jacobs, Jenkins & Pritzker, Chicago, Ill., for appellant; Gregory L. Rothnem, Thomas L. Steffens and Thomas B. Olson, Minneapolis, Minn., on brief.

Paul Hauge and Bradley Smith, Eagan, Minn., for appellees; Paul H. Hauge & Associates, P. A., Eagan, Minn., on brief.

David G. Johnson, MCLU Volunteer Atty., Prior Lake, Minn., and Linda Ojala, MCLU Legal Counsel, Minneapolis, Minn., amicus curiae.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.[*]

HEANEY, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Minnesota denying Robin Geiger's motion for a preliminary injunction. Geiger, owner of "Mak'n Magic," a store selling, among other things, pipes and smoking accessories, challenges the City of Eagan's Ordinance No. 71 entitled "An Ordinance Prohibiting the Sale, Transfer and Possession of Drug-Related Devices."

The challenged ordinance prohibits the "possession, sale, transfer or display for sale or transfer" of a "drug-related device," as defined by the ordinance. Violation of the ordinance is a misdemeanor punishable by a fine of up to $500.00, imprisonment up to ninety days, or both.

Geiger commenced the action on July 18, 1979, one day after the initial version of the ordinance was adopted by the Eagan City Council.[1] On July 20, 1979, the district court entered an order temporarily restraining enforcement of the ordinance pending a hearing on a motion for a preliminary injunction. On August 29, 1979, the district court denied the request for preliminary injunctive relief after oral argument and submission of memoranda and affidavits but without an evidentiary hearing. Thereafter, Geiger's attorney took depositions of Geiger, Eagan's mayor and two Eagan police officers in order to demonstrate the ambiguity of the definition of "drug-related devices." The deponents disagreed whether some of the objects shown to them were permitted by the ordinance. Geiger then requested a rehearing based on the depositions. Rehearing was denied, but an order enjoining enforcement of the challenged ordinance pending an expedited appeal to this Court was granted.

In denying Geiger's request for a preliminary injunction, the district court considered both of the tests discussed by this Court in *Fennell v. Butler,* 570 F.2d 263 (8th Cir. 1978). It held that under either test, the request for injunctive relief should be denied.[2] We disagree. In our view, Geiger has met the standards for the issuance of injunctive relief under either test articulated in *Fennell.*

---

[*] The Honorable Albert G. Schatz, United States District Court for the District of Nebraska, sitting by designation.

[1] The initial version of the ordinance was adopted July 17, 1979, and was to become effective upon publication on July 26, 1979. However, on July 24, 1979, a revised version of the ordinance was adopted. It is this revised version of the ordinance which is now before us.

[2] In its Memorandum Order, the district court stated:

Plaintiff has failed to demonstrate that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation." *A fortiori,* he has also failed to make a clear showing of probable success on the merits and his request for the preliminary injunction must be denied.

*Geiger v. City of Eagan,* No. 3–79–361, slip op. at 5 (D. Minn. August 29, 1979).

■ We consider the ordinance unconstitutionally vague on its face.[3] The City of Eagan clearly has the power through a properly drawn ordinance to discourage the availability of drugs and the acceptance of drug use by prohibiting the sale of drug-related devices.[4] This is not such an ordinance.

■ The doctrine of vagueness is embodied in the due process clauses of the Fifth and Fourteenth Amendments. Due process incorporates notions of fair notice or warning. *Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974). As the Supreme Court said in *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926):

> [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.

Furthermore, when a criminal statute is involved,

> [n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.

*Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939).

■ Due process has two requirements: that laws provide notice to the ordinary person of what is prohibited and that they provide standards to law enforcement officials to prevent arbitrary and discriminatory enforcement.

3. Geiger has alleged numerous other constitutional challenges to the ordinance; however, in light of our disposition of this issue, we do not reach them.

4. *See, e. g.*, Model Drug Paraphernalia Act, drafted by the Drug Enforcement Administration, U. S. Department of Justice, August, 1979.

5. Other cases which have considered some of the issues involved in this case include: *Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, No. 78–C–2114 (N.D. Ill. February 11, 1980); *Indiana Chapter, NORML, et al. v. Sendak, et al.*, No. TH 75–142–C (S.D. Ind.

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) (footnotes omitted).

There is concern that lawmaking will be entrusted "to the moment-to-moment judgment of the policeman on his beat." *Gregory v. City of Chicago*, 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (Black, J., concurring).

■ The language of the Eagan ordinance at issue is the definition of "drug-related device."[5] The ordinance defines "drug-related device" as "any pipe or other object suitable to be used for smoking" with one of the following characteristics:

1. Contains a visible fine wire mesh screen; or

2. Contains a bowl with the interior surface made of metal, glass, acrylic, plexiglass or plastic; or

February 4, 1980) (en banc); *Mid-Atlantic Accessories Trade Association, et al. v. Prince George's County, Maryland*, No. B–79–2385 (D. Md. December 21, 1979); *Walter A. Weingart, et al. v. The Town of Oyster Bay, et al.*, No. 79–C–2932 (E.D. N.Y. December 17, 1979); *Record Museum v. Lawrence Township*, 481 F.Supp. 768 (D. N.J., 1979); *Tobacco Road, Inc. v. City of Novi*, No. 79–71000 (E.D. Mich. June 20, 1979); *Anthony J. Cardarella, d/b/a Tiger's Records v. City of Overland Park, Kansas*, No. 86246 (Dist.Ct., Johnson Cty., Kan., February 8, 1980).

3. Contains a bowl with an inside diameter of one-half inch or less at the halfway point between the top and the bottom of the bowl; or

4. Contains a chamber; or

5. Contains a flexible tube or tubes.

"Chamber," "bowl" and "pipe stem" are further defined in the ordinance:

"Chamber" means an enclosed area suitable for the collection or movement of smoke, other than a bowl, pipe stem, flexible tube, or a tube suitable for holding cigarettes or cigars.

"Bowl" means a concave-shaped object suitable for holding a smoking material to be lighted.

"Pipe stem" means a non-flexible tube with one end entering directly into a bowl.

The words of the ordinance do not have a common understanding developed at law. We focus first on the operative language "any pipe or other object suitable to be used for smoking." The common understanding of these words is that they describe tobacco smoking accessories, not drug paraphernalia. We are, therefore, left with the language of the ordinance itself to determine what is prohibited as a "drug-related device." It is obvious that there are many types of pipes. Also, an "object" may be "suitable to be used for smoking," even if it is not actually so used. Indeed, which objects are "suitable" to be used for smoking controlled substances may depend upon the ingenuity and current practices of drug users.

The ordinance then enumerates characteristics which the "pipe" or "object" must possess in order to be prohibited. These characteristics are presented in the form of alternatives, rather than as a cumulative definition, which places the unwary in the position of analyzing each provision. Furthermore, the characteristics are themselves vague. For instance: (1) at what point does an "area" become "enclosed" to become a "chamber;" (2) at what point does a "pipe stem" turn into a "chamber;" (3) at what point does a "bowl" become a "chamber;" (4) is a "tube suitable for holding cigarettes or cigars" prohibited if it is a "flexible tube;" (5) how "fine" must a "wire mesh screen" be to be prohibited, and from what vantage point must it be "visible" to be prohibited; (6) what kind of visual inspection will be necessary to determine that the "bowl" has "an inside diameter of one-half inch or less at the halfway point between the top and the bottom of the bowl"? The characteristics thus fail to provide definiteness as to what makes a "pipe" or "object" a "drug-related device."

Furthermore, the ordinance prohibits private "possession" as well as commercial "sale" of "drug-related devices." The ordinance thus reaches the individual in his home as well as sellers in their place of business. Yet the private individual is held to the same standard of knowledge as the owner of a commercial establishment in determining which "pipe" or "other object suitable to be used for smoking" may exhibit the prohibited characteristics.

The ordinance further lacks arrest and search standards for enforcement officials. Under the ordinance, the possession of a "drug-related device" could be the basis for an arrest even if there was no controlled substance present. Also, seeing "any pipe or other object suitable to be used for smoking" could be the basis for a search to determine if characteristics which turned it into a "drug-related device" were present. An arrest for possession of a "drug-related device" could support a search for controlled substances in a vehicle or at a home or on a person. Where definite guidelines for enforcement officials are not present, use of the ordinance to expand arrest opportunities and justify searches magnifies the potential harm from enforcement of the ordinance.[6]

On the basis of this record, we have no alternative but to reverse and remand with

---

6. *See Note, Paraphernalia for Marijuana and Hashish Use: Possession Statutes and Indiana's Pipe Dream*, 10 Val.U.L.Rev. 353 (1976).

directions that the district court enter a preliminary injunction until trial, at which point the merits of the ordinance can be fully weighed.