The CASBAH, INC.; the Disco-Counter, Inc.; Jeffrey Ferber, d/b/a H. & D. Sales; Gregory Hasselhorst, d/b/a Euphoria; Eric Listou, d/b/a Joint Venture Novelty Shop; Pipe Dream, Inc.; and Dennis Robinson, d/b/a The Joynt, Plaintiffs,

v.

Charles THONE, Governor of the State of Nebraska; Paul Douglas, Attorney General for the State of Nebraska; Elmer Kohmepsher, Colonel in Charge of the Nebraska State Patrol; and Donald L. Knowles, County Attorney for Douglas County, Nebraska, Defendants.

Civ. No. 80-0-271.

United States District Court,
D. Nebraska.

Sept. 26, 1980.

---

Donald B. Fiedler, Omaha, Neb., for plaintiffs.

Steven E. Achelphol, Omaha, Neb., Patrick O'Brien, Asst. Atty. Gen., Lincoln, Neb., Henry Wendt, Asst. County Atty., Omaha, Neb., for defendants.

## MEMORANDUM

RICHARD E. ROBINSON, Senior District Judge.

In this action, the plaintiffs challenge the constitutionality of L.B.991, a Nebraska statute regulating the use, distribution and advertisement of "drug paraphernalia." In their verified complaint, the plaintiffs seek declaratory and injunctive relief. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201 and 2202.[1] This Memorandum constitutes the Court's findings of fact and conclusions of law.

On April 23, 1980 this Court, pursuant to an agreement of counsel, entered an Order [Filing # 6] temporarily restraining the enforcement of L.B.991 pending a final deter-

mination on the merits. Commencing on September 4, 1980, plaintiffs' application for a preliminary and permanent injunction was tried to the Court. *See* Rule 65(a)(2) Fed.R.Civ.Pro. For the reasons set out below, the Court finds that L.B.991 is constitutional as it is construed in this Memorandum.

### I

The plaintiffs in this action are wholesale distributors and retail merchants who sell various gift and novelty items including what are euphemistically referred to as accessories.[2] The defendants include Charles Thone, the Governor for Nebraska, Elmer Kohmepsher, of the Nebraska State Patrol, Paul Douglas, the Nebraska Attorney General, and Donald Knowles, the Douglas County Attorney.

L.B.991 was passed by the Nebraska Unicameral on April 18, 1980 and signed into law five days later by Governor Thone. The Bill amends various sections of the *Nebraska Criminal Code*[3] and provides in pertinent part as follows:

> Section 1. As used in this act, unless the context otherwise requires, drug paraphernalia shall mean all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in manufacturing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this act or the Uniform Controlled Substances Act. It shall include, but not be limited to, the following:

---

1. This is not an appropriate case for abstention. In *High Ol' Times Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980) the Court reversed a district court's decision to abstain in a case challenging the constitutionality of a Georgia paraphernalia statute. The crux of the court's analysis is set out below and is dispositive of the issue here:

> If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction.

> We believe that such is the case here; a state court interpretation of the statutes would neither render unnecessary nor substantially modify the federal constitutional question. *Id.* at 140.

(citations omitted).

2. Several of the original plaintiffs were permitted to withdraw from this action prior to the hearing on the merits. The party plaintiffs also include a "John Doe" who purports to represent Nebraska pipe smokers who fear prosecution under the statute.

3. *Neb.Rev.Stat.* §§ 28–101 and 28–439.

(1) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting controlled substances;

(2) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

(3) Hypodermic syringes, needles, and other objects used, intended for use, and designed for use in parenterally injecting controlled substances into the human body; and

(4) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, which shall include but not be limited to the following:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(b) Water pipes;

(c) Carburetion tubes and devices;

(d) Smoking and carburetion masks;

(e) Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, which has become too small or too short to be held in the hand;

(f) Miniature cocaine spoons, and cocaine vials;

(g) Chamber pipes;

(h) Carburetor pipes;

(i) Electric pipes;

(j) Air-driven pipes;

(k) Chillums;

(l) Bongs; and

(m) Ice pipes or chillers.

Section 2. In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically relevant factors, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;

(3) The proximity of the object, in time and space, to a direct violation of this act;

(4) The proximity of the object to any controlled substance;

(5) The existence of any residue of a controlled substance on the object;

(6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to any person whom he or she knows, or should reasonably know, intends to use the object to facilitate a violation of this act. The innocence of an owner, or of anyone in control of the object, as to a direct violation of this act shall not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise;

(13) The existence and scope of any legitimate use for the object in the community; and

(14) Expert testimony concerning its use.

Section 3. (1) It shall be unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture, inject, ingest, inhale, or other-

wise introduce into the human body a controlled substance in violation of this act.

(2) Any person who violates this section shall be guilty of an infraction.

Section 4. (1) It shall be unlawful for any person to deliver, possess, with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to manufacture, inject, ingest, inhale, or otherwise be used to introduce into the human body a controlled substance in violation of this act.

(2) Any person who violates this section shall be guilty of a Class II misdemeanor.

Section 5. Any person eighteen years of age or older who violates section 4 of this act by delivering drug paraphernalia to a person under eighteen years of age who is at least three years his or her junior shall be guilty of a Class I misdemeanor.

Section 6. (1) It shall be unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia.

(2) Any person who violates this section shall be guilty of a Class III misdemeanor.

Section 7 of L.B.991 amends § 28–431 of the *Nebraska Revised Statutes* in that it adds drug paraphernalia to the list of items subject to civil forfeiture. The relevant portion of Section 7 provides:

That section 28–431, . . . be amended to read as follows: 28–431. (1) The following shall be seized without a warrant by an officer of the Division of Drug Control or by any peace officer, and the same shall be subject to forfeiture: (a) All controlled substances which have been manufactured, distributed, dispensed, acquired, or possessed in violation of the provisions of this article; . . . (f) all drug paraphernalia defined in section 1 of this act.

Section 10 of L.B.991 is a severability provision:

If any section in this act or any part of any section shall be declared invalid or unconstitutional, such declaration shall not affect the validity or constitutionality of the remaining portions thereof.

L.B.991 is similar to legislation passed in other jurisdictions aimed at regulating or prohibiting the sale of items used to ingest controlled substances.[4] Without exception, these laws are intended to aid in the struggle against drug abuse, particularly among young people.[5] Testimony concerning the extent of the drug problem was presented at the public hearings on L.B.991. An adolescent psychiatrist employed by the Nebraska Psychiatric Institute testified that "as many as one out of nine of our high school students are using [marijuana] daily."[6] He pointed out that there are severe emotional and physical ailments associated with chronic marijuana use. Observing that certain devices used to smoke marijuana make it possible to bring concentrated marijuana smoke into the body, the psychiatrist noted that daily marijuana use with these devices was extremely damaging to the lungs and promoted respiratory ail-

4. For example, legislation similar to L.B.991 has been enacted by Connecticut, Delaware, Florida, Illinois, Indiana, Louisiana, Maryland, New Jersey, New York, and South Carolina. City ordinances seeking to ban drug paraphernalia have been passed in numerous communities including Overland Park, Kansas; Parma, Ohio; Lawrenceville, New Jersey; Antioch, Illinois; and Oyster Bay, New York.

5. In upholding an Overland Park ordinance prohibiting the sale and display of drug para-

phernalia, a Kansas district court observed: "The City of Overland Park, in response to a serious problem of drug usage among school children, adopted the challenged ordinance to discourage the promotion and use of drugs by minors." *Cardarella v. City of Overland Park*, No. 86246 p. 2 (Dist.Ct.Kan.1979).

6. Hearings on L.B.991 before the Judiciary Committee of the Nebraska Legislature (March 11, 1980), at 116.

ments including bronchitis, emphysema and cancer.[7]

There is no doubt that the State of Nebraska in protecting the health and welfare of its citizens may legitimately enact legislation intended to curtail illicit drug use. *Robinson v. California*, 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962). If it is properly drawn, legislation dealing with the acute problem of drug abuse may prohibit the sale of "drug related devices." *Geiger v. City of Eagan*, 618 F.2d 26, 28 (8th Cir. 1980).

## II

Despite its laudable purpose, legislation banning drug paraphernalia must pass constitutional muster. Elsewhere, lawmakers have rushed to pass laws banning paraphernalia and in the process have trampled upon a host of rights protected by the Constitution. *See e. g. Geiger v. City of Eagan, supra; Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980); *Magnani v. City of Ames*, 493 F.Supp. 1003 (S.D.Iowa 1980).

The Nebraska statute differs from the laws invalidated in the above cases in that it is patterned after the "Model Drug Paraphernalia Act" (hereinafter Model Act). The Model Act was drafted by the Drug Enforcement Administration of the United States Department of Justice and seeks to avoid the constitutional infirmities which have plagued other paraphernalia laws. Notwithstanding its similarities to the Model Act, the plaintiffs assail the constitutionality of L.B.991 on several fronts. They claim that the statute places an impermissible burden on interstate commerce, violates the First and Fourth Amendments, is vague and overbroad, and lacks the specific intent required by due process.

Before considering each of plaintiffs' contentions, it is helpful to review the general principles which obtain whenever it is claimed that a statute is facially unconstitu-

tional. In *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975) the facial validity of a city ordinance was challenged. There, the Court set out several principles which are applicable here:

[W]hen considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interferences with a state regulatory program. . . . [A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts. . . .

*See Sawyer v. Sandstrom*, 615 F.2d 311, 315 (5th Cir. 1980).

It should also be remembered that when a criminal statute is susceptible to different interpretations, the Court should favor an interpretation which supports constitutionality. *Screws v. United States*, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495 (1945); *Record Revolution No. 6, Inc. v. City of Parma*, 492 F.Supp. 1157 (N.D. Ohio 1980). The Supreme Court recognized over ninety years ago that all statutes should be given a sensible construction and judicial common sense requires that "[g]eneral terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence." *Church of the Holy Trinity v. United States*, 143 U.S. 457, 461, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). This insight is still good law today and is particularly applicable when a court is asked to construe a drug paraphernalia law. *See The Flipside v. Village of Hoffman*, 485 F.Supp. 400, p. 406 (N.D.Ill.1980); *Levas v. Village of Antioch*, No. 80C 1574 (N.D.Ill.1980); *Record Revolution No. 6, Inc. v. City of Parma, supra*, at 1166.

There is no question that L.B.991 seeks to dam the swell of drug abuse by outlawing those devices which facilitate illicit drug use.[8] If the statute can be interpreted in a

---

7. The devices referred to are bongs [see e.g. defendants' exhibit 24] and "power hitters" [defendants' exhibit C–2].

8. It is axiomatic that a legislature may deal with a problem one step at a time and may

manner which is both consistent with this purpose and faithful to the Constitution, then the Court is bound to articulate that interpretation. Accordingly, in considering the arguments advanced by the plaintiffs, the statute will be construed with a view toward identifying a constitutional construction which will meet the legislative purpose.

## III

A. *Vagueness.*

■ It is contended that L.B.991 is unconstitutional because it violates the due process concept of "void for vagueness." Simply put, a criminal statute, like L.B.991, must give notice of what conduct the statute prohibits so that the ordinary citizen may act accordingly. The Constitution will not permit a statute to impose criminal sanctions unless it first gives notice of what conduct will result in liability. *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). *In Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Court articulated the reasons for the vagueness doctrine:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and un-

lawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Id.* at 108–09, 92 S.Ct. at 2298–99. The Eighth Circuit Court of Appeals has fairly summarized what due process requires in the context of construing a drug paraphernalia ordinance. As the Court said in *Geiger*, "[d]ue process has two requirements: that laws provide notice to the ordinary person of what is prohibited and that they provide standards to law enforcement officials to prevent arbitrary and discriminatory enforcement." *Supra* at 28. This is the standard against which L.B.991 must be measured.[9]

■ The plaintiffs' vagueness objections can be broken down into three parts. First, the plaintiffs assert that the definition of drug paraphernalia in section one is vague

---

seek a solution by concentrating on a single area. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955).

**9.** The plaintiffs contend that the court's due process analysis should employ a "strict scrutiny" rather than a "rational basis" test. The argument is that L.B.991 violates the fundamental rights protected by the First and Fourth Amendments and therefore the former test is applicable. The notion that strict scrutiny applies where the statute in question prohibits drug paraphernalia is a novel proposition. It is also totally unsupported by the case law. The plaintiffs are unable to point to a single case where a court has construed a drug paraphernalia statute using the standard of review argued for here. Where drug ordinances have been challenged on similar grounds, the courts have consistently applied traditional equal protection analysis. In upholding a drug paraphernalia ordinance in Michigan, Judge Boyle said:

Where a statute impacts on a fundamental interest, such as voting, or involves a suspect classification, such as race, the Court must carefully scrutinize the legislation to determine whether the state has a compelling interest in the end to be attained and whether the means used are closely congruent to the ends sought.

Where, as here, neither a fundamental right nor a suspect classification is involved, traditional equal protection analysis is the standard of review. (citations omitted).

*Tobacco Road v. City of Novi*, 490 F.Supp. 537, p. 541 (E.D.Mich.1979); *see Record Revolution v. City of Parma*, 492 F.Supp. 1157 (N.D.Ohio 1980). In the *Parma* case, the plaintiff raised essentially the same arguments advanced here. In finding the Ohio ordinance constitutional, Judge Manos pointed out that "traditional equal protection analysis provides the standard of review." *Id.* at 1180.

because virtually anything can be drug paraphernalia under the statute. Even a cursory reading of section one confirms plaintiffs' observation. Section one of L.B.991 provides in part that "drug paraphernalia shall mean *all equipment, products, and materials of any kind* which are used, intended for use, or designed for use ... [to introduce] into the human body a controlled substance...." (emphasis added). In addition, plaintiffs' evidence at trial made tediously clear that the only limit on what can be used to introduce a controlled substance into the body is imagination. The evidence established that a variety of otherwise innocent items can be used to ingest controlled substances. For example, the plaintiffs demonstrated that an aluminum can or a piece of fruit can be used to smoke marijuana.[10] If section one did no more than outlaw any item which might be used with illegal drugs, then plaintiffs' first vagueness argument would find its mark and the statute would be fatally flawed. A statute which simply prohibited the sale of all such items would be unconstitutionally vague. *See, Record Revolution, Inc. v. City of Parma, supra* at 1166 (citing *United States v. Brunnet* 53 F.2d 219 (W.D.Mo. 1931). It would fail both prongs of the due process test; it would not give notice of what is prohibited and would invite discriminatory enforcement.

■ Drug paraphernalia as defined in section one of L.B.991 is any item which is used, intended for use, or designed for use

in ingesting a controlled substance. This definition is not vague because it defines drug paraphernalia with reference to the intent of the person charged with an offense under the statute. The inclusion of intent in the definition of drug paraphernalia is crucial; it permits the law to identify "innocent" objects as paraphernalia when they are used with a controlled substance and at the same time exculpates otherwise "suspicious" items which are in fact used for innocent purposes.[11] The intent requirement renders plaintiffs' concern that "anything" can be paraphernalia unnecessary.

The drafters of the Model Act point out that:

> To insure that innocently possessed objects are not classified as drug paraphernalia, [the definition] makes the knowledge of *criminal intent of the person in control of an object a key element of the definition.* Needless to say, inanimate objects are neither "good" nor "bad," neither "lawful" nor "unlawful." Inanimate objects do not commit crimes. *But, when an object is controlled by people who use it illegally, or who design or adapt it for illegal use, the object can be subject to control and the people subjected to prosecution.* [The definition] requires, therefore, that an object be used, intended for use, or designed for use in connection with illicit drugs before it can be controlled as drug paraphernalia.

---

**10.** Plaintiffs' exhibit 141 is an apple which was carved in such a manner that it could be used as a smoking device. Similar surgery was performed on a soft drink can, plaintiffs' exhibit 140.

**11.** In passing it is noted that other courts have grappled with the definition of drug paraphernalia. The Eighth Circuit Court of Appeals has said that paraphernalia "has become a standard vocabulary work in the vernacular of the drug community...." *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976). An Iowa court found an ordinance which attempted to define paraphernalia with reference to certain items unconstitutionally vague. *See Magnani v. City of Ames*, 493 F.Supp. 1003 (S.D.Iowa 1980). This Court is of the opinion that the only constitutionally permissible way to define drug paraphernalia is not be reference

to any identifiable set of objects but by considering the intent of the defendant vis a vis the item in question. It is constitutional folly to attempt to isolate certain items as drug paraphernalia *per se* because the vast majority of items used with controlled substances also have innocent uses. Thus, to meet the bedrock constitutional requirement of notice, the definition of paraphernalia must be grounded not in the intrinsic qualities of the suspected object but in the intent of the alleged offender. In short, L.B.991's definition of drug paraphernalia is constitutional because it puts all citizens on notice that *any* object used, intended for use, or designed for use with a controlled substance falls within the ambit of the statute. One can determine and must avoid what the statute forbids.

Model Act Comment pp. 6–7 (1979). (Emphasis added).

Intent saves the definition of drug paraphernalia from being unconstitutionally vague. It provides notice of what the statute prohibits—all items used, intended for use, or designed for use with a controlled substance—and it puts those charged with enforcing the statute on notice that a determination of what constitutes paraphernalia can be made only by identifying the intent of the suspect.

Plaintiffs claim that the "designed for use" phrase in the definition of drug paraphernalia is vague. They cite an Indiana drug paraphernalia case where the judge was troubled by the term. *Indiana Normal v. Sendak*, No. TH 75–142–C p. 13 (S.D.Ind. 1980). The Court finds that the term is not vague when it is read in the context of the entire statute. "Designed for use" in L.B.991 refers not to the physical characteristics of an object but to the subjective intent or plan of the person controlling the object. The whole tenor of the statute makes clear that any object, *depending upon its use*, can be drug paraphernalia. In fact, section two of the statute sets out fourteen factors which are to be considered in determining if any given object is paraphernalia; those factors focus not on the physical features of the suspected item but on the context in which the item is found. The factors are an aid in determining whether a person "designed" the object as paraphernalia. The physical properties of an item may not offer a clue about its illicit use. As the court in *Delaware Accessories Trade Assn. v. Gebelein*, 497 F.Supp. 289, p. 291 (D.Del.1980) said "the statute itself indicates that 'designed for use' refers not to structure but to intent." In short, when "designed for use" is integrated into the statute it is not vague nor even easily susceptible to misunderstanding.

Plaintiffs' second vagueness argument is more troublesome. It is contended that the definition of drug paraphernalia does not indicate whose intent is relevant. This, says the plaintiffs, makes it possible for an innocent person to be prosecuted under the statute for the unlawful intent of another.[12] See *Indiana Normal v. Sendak*, No. TH 75–142–C (S.D.Ind.1980). Section one of L.B.991 does not explicitly state whose intent should be considered in determining if an object is drug paraphernalia. If section one is read in isolation, plaintiffs' argument is plausible. However, if section one is read, as it must be, with all of the other sections of the statute it becomes clear that no transfer of intent is possible. Sections 3, 4, 5 and 6 of L.B.991 proscribe certain conduct vis a vis drug paraphernalia. Generally, section 3 prohibits possession, section 4 prohibits delivery or possession with intent to deliver, section 5 provides a more severe penalty for delivering drug paraphernalia to a minor, and section 6 makes it unlawful to advertise the sale of drug paraphernalia. An essential element of each offense is that the person knew or reasonably should have known that the object in question will be used to introduce a controlled substance into the body. A common sense reading of this requirement makes clear that it refers to *the person who is charged with the violation*. It is fundamental that to violate a criminal statute there must be an act coupled with the requisite criminal intent. "The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). The comments to the Model Act indicate that the definition of drug paraphernalia makes reference to intent "to insure that innocently possessed objects are not classified as drug paraphernalia." In light of the statute's mens rea requirement and the inclusion of intent in the definition of drug paraphernalia only an absurd construction of the statute would trap an innocent user or purchaser because of the guilty intent of

---

12. The plaintiffs offer the following example: A merchant sells a wooden pipe to "A". "A" uses the pipe for smoking marijuana, as he intended to do when he made the purchase. That intention of "A" translates the pipe into drug paraphernalia for purposes of invoking the sanctions of this law against the merchant. Plaintiffs' Pre-trial Brief at 31.

a seller. To avoid any uncertainty, the Court specifically finds that the intent element in the definition of drug paraphernalia applies to the person charged with violating the statute. *Accord, Record Revolution v. City of Parma, supra* at 1169; *Delaware Accessories Trade Assn. v. Gebelein,* 497 F.Supp. 289, p. 292 (D.Del.1980); *Florida Businessmen for Free Enterprise v. City of Hollywood,* No. 80–6157–Civ–NCR pp. 7–8 (S.D.Fla.1980).

■ Finally, plaintiffs argue that section two of L.B.991 is unconstitutionally vague. Section two sets out fourteen factors which *must* be considered in determining whether an object is drug paraphernalia. It is claimed that the factors are vague and therefore lawmaking is impermissibly left "to the moment-to-moment judgment of the policeman on his beat." *Gregory v. City of Chicago,* 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (Black, J., concurring). A vague statute violates due process, in part, because it magnifies the potential for discriminatory enforcement. *Geiger v. City of Eagan, supra,* at 29.

In this case, the factors which are objected to do not encourage arbitrary enforcement. On the contrary, they provide law enforcement officials with a valuable guide in determining what items are prohibited by the statute. It is significant that the factors listed must be used in identifying drug paraphernalia. The fact that enforcement officials are obliged to consider the factors listed in section two minimizes the danger that an object will erroneously be identified as paraphernalia. It is important to keep in mind that under L.B.991 there are no objects which are *per se* drug paraphernalia. As a result, those charged with enforcing the law must be given adequate notice of what circumstances bring an item under the proscriptions of the statute.

■ With one exception, that notice is provided in section two of the statute. The exception is factor (11) which provides that in determining whether an object is drug paraphernalia the following should be considered:

> Whether the owner, or anyone in control of the object, is a *legitimate* supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products.... (emphasis added).

This language was struck from a virtually identical law in the *Parma* case *supra.* For the reasons given there, the Court severs factor (11) from the statute.[13] In *Parma,* Judge Manos said:

> This portion of the Ordinance fails the second test of vagueness; the reference to "legitimate" suppliers creates a danger of arbitrary and discriminatory enforcement. Because the provisions of this Ordinance apply to *all* who use, distribute or advertise even an innocent item with the requisite intent, the term "legitimate" supplier is imprecise and misleading. (citations omitted) (emphasis original).

Except for factor (11), section two provides just the sort of criteria which judges, juries, and law enforcement officials need to make an objective decision in determining if an object falls under the statute.[14]

---

**13.** L.B.991 specifically provides for severability:

> Section 10. If any section in this Act or any part of any section shall be declared invalid or unconstitutional, such declaration shall not affect the validity or constitutionality of the remaining portions thereof.

There is ample authority for severing the unconstitutional section of a statute while allowing the constitutional portion to stand. *See e. g. Champlin Refining Co. v. Corporation Commission,* 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932); *Dorchy v. Kansas,* 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924).

**14.** The term "legitimate" also appears in factor (13):

> The existence and scope of any *legitimate* use for the object in the community....

Legitimate in this case refers not to a person, i. e. a supplier, as it did in factor (11) but to the way an object is used. Objects, of course, are innately neither legitimate nor illegitimate. To describe the use of an object as "legitimate" is to say nothing more than it has a lawful use. To similarly describe a person conjures up a variety of images some of which invite discrimination. "Legitimate" is acceptable in factor (13) but not in (11) because the statute provides sanctions against people not objects.

## B. *Overbreadth.*

■ While the terms vagueness and overbreadth are often used together, they are distinct concepts. A statute is impermissibly vague when its prohibitions are not clearly defined. *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Even a clear and precise law may suffer from overbreadth if its sweep is unnecessarily broad and it invades the area of protected freedoms. *Zwickler v. Koota*, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967). The overbreadth doctrine generally arises in a First Amendment context because the "First Amendment needs breathing space and statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 612–13, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). *See e. g. Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

■ In this case, plaintiffs' overbreadth claim is not grounded in the contention that L.B.991 abridges First Amendment freedoms.[15] Rather, plaintiffs claim that the statute is overbroad because "it draws in Articles whose major uses are overwhelmingly lawful." Plaintiffs' Pre-trial Brief at 38. Plaintiffs complain that the statute impermissibly outlaws innocent items and punishes their innocent users because of the criminal intent of others. This is nothing more than another rendition of the vagueness arguments previously discussed. The short answer to plaintiffs' overbreadth objection is that no item is drug paraphernalia *per se* under the statute. Only when an object is used, intended for use, or designed for use with a controlled substance does it

become prohibited. An example of how the statute operates is found in the comments to the Model Act. A spoon, a hypodermic syringe, and a length of surgical tubing all have legitimate uses in the community. "[W]hen these objects are manufactured, delivered and possessed in lawful commerce, they are not considered paraphernalia. But if these same objects are assembled and used by an addict to illegally melt heroin and inject it into the body, they become drug paraphernalia." Comments to the Model Act p. 7 (1979). L.B.991 is not overbroad because it discriminates between lawful and prohibited objects by scrutinizing the intent of the possessor or user.

## C. *Specific Intent.*

■ The plaintiffs argue that L.B.991 violates the due process clause of the Fourteenth Amendment because it permits a person to be convicted without a showing of criminal intent. They point specifically to the "reasonably should know" standard in sections 4 and 6 of the statute. Section 4 provides that:

> It shall be unlawful for any person to deliver, possess with intent to deliver or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one *reasonably should know*, that it will be used ... to introduce [a controlled substance into the body]. (Emphasis added).

It is contended that this constructive knowledge standard is at odds with the scienter requirement in the definition of drug paraphernalia. Plaintiffs correctly point out that it is inconsistent to say that intent saves the definition of drug paraphernalia from vagueness and then permit a person to be convicted of delivering "drug paraphernalia" because he or she incorrectly guessed that the item would not be used with illicit drugs. To say that before an object can be drug paraphernalia it must be used, intended for use, or designed for use with a controlled substance is to say that the defini-

---

**15.** For an analysis of how L.B.991 impacts on the First Amendment see pages 486–487 *infra. infra.*

tion of drug paraphernalia includes an element of general criminal intent. Faced with a nearly identical statute a Federal Court in Ohio said:

> The Court construes each of these three elements [used, intended for use, designed for use] as implying and requiring the existence of general criminal intent by the defendant. Thus, the criminal defendant's voluntary and intentional use of an item with illegal drugs makes it drug paraphernalia within the meaning of this Ordinance.... Adding the element of general intent not only narrows the scope of the ordinance, it insures that no one will be convicted by mistake, accident or innocent reason. *Parma, supra,* at 1169–70.

Under the reasonably should know standard a conviction can be had without a showing of general criminal intent; that is, without establishing that the defendant specifically intended to violate the statute. As a result, the reasonably should know standard vitiates the prophylactic effect of the scienter requirement in the definition of drug paraphernalia. The statute cannot constitutionally take away with one hand what it gives with another.

In finding the reasonably should know standard unconstitutional in a Roxbury drug paraphernalia ordinance, the Court offered a cogent example of its defect:

> [T]he seller faced with the Roxbury Ordinance has to ... determine what the customer intends to do with the items of purchase. Certainly in a case where the purchaser announces his or her intention to utilize the paraphernalia purchased for an illegal purpose, the seller would be placed in no dilemma; however, the question arises as to what would create a reasonably belief in the mind of the seller in the absence of such an unlikely announcement by the purchaser. Does the purchaser's age, sex, mannerisms or dress afford to a seller reason to believe that the paraphernalia will be used for an illegal purpose? Or should the nature of the purchaser's companions or the items he or she carries be determinative? These questions indicate the difficulty that a merchant, as well as a law enforcement officer, would have, in the absence of an admission by the purchaser, in determining what gives rise to a reasonable belief that a purchaser intends to utilize the paraphernalia for an illegal purpose. An additional concern is whether it is proper to charge an owner of a department store, or any other store, with responsibility for a sales clerk's determination as to whether the person purchasing an item, especially an innocuous one such as a weight scale or a spoon, intends to utilize it for some improper and illegal purpose.

*Knoedler v. Roxbury Township,* 485 F.Supp. 990, 993 (D.N.J.1980). The reasonably should know standard is unconstitutional. It fails to give notice of what is forbidden and it forces law enforcement personnel to guess about when a seller has violated the statute. Therefore, the Court severs the reasonably should know standard wherever it appears in L.B.991.[16]

Recently, other courts have upheld the constructive knowledge requirement in construing other laws based on the Model Act. *Delaware Trade Assn. v. Gebelein,* 497 F.Supp. 289, p. 293 (D.Del.1980). In *Delaware Trade Assn.* it is said that "the seller is safe so long as he does not actually know the buyer's purpose and so long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue." This analysis begs the question. The issue is precisely what set of facts do give notice of a buyer's illicit intentions. If a man wearing a business suit purchases a hookah[17] from a gift shop saying "I'll enjoy this pipe with my friends tonight," should the merchant know that the pipe will be used to ingest a controlled substance? Suppose the man entered the

---

**16.** See note 13 *supra.* The reasonably should know language is found in sections 4 and 6 of the statute and applies by implication to section 5.

**17.** A hookah is an ornate pipe. See plaintiffs' exhibit 107.

gift shop unshaven in jeans and a t-shirt and said the same thing. Is the merchant now on notice that the item will be used to ingest a controlled substance? Should the man's age or his mannerisms change the merchant's conclusion? Obviously, it is difficult to articulate when a merchant should reasonably know that an item he sells will be used to ingest a controlled substance. The reasonably should know standard simply cannot be justified on the theory that a merchant's "objective" observations about his customers will keep him out of harms way.

The defendants point out that the reasonably should know standard is currently found in a number of criminal statutes at both the state and federal level.[18] That the standard is pervasive does not make it constitutional in this instance. The reasonably should know standard violates due process in this case because of the unique nature of the statute at hand. To be effective, a drug paraphernalia statute must regulate a myriad of items which have a lawful purpose. Unlike other statutes, it cannot base its proscriptions on the physical characteristics of the items in question. Rather, regulation—to be both effective and constitutional—must concentrate on the intent of the accused. To avoid imposing sanctions for innocent possession or use, a statute must provide that the accused specifically intended to violate its provisions. Where lawmakers have attempted to draft drug paraphernalia statutes without sufficiently considering the pivotal element of intent,

they have found that the laws do not survive judicial scrutiny because they are vague and over inclusive. See e. g. Magnani v. City of Ames, 493 F.Supp. 1003 (S.D. Iowa 1980); Record Museum v. Lawrence Township, 481 F.Supp. 768 (D.N.J.1979); Weingart v. Town of Oyster Bay, No. 79C 2932 (E.D.N.Y.1979). The Nebraska statute is constitutional only when specific intent is required to obtain a conviction under its provisions.

Requiring the state to prove beyond a reasonable doubt that a prohibited act was done "knowingly" minimizes the danger that a person will be convicted for an innocent act. An act is done knowingly if it is done voluntarily and intentionally, and not because of mistake or accident or innocent reason. See United States v. Sirhan, 504 F.2d 818 (9th Cir. 1974); Devitt & Blackmar, Federal Jury Practice and Instructions § 14.04 (1977). The knowledge of the use to which an object will be put may be difficult for the state to prove beyond a reasonable doubt. Nevertheless, it is precisely this rigorous requirement which saves the statute from vagueness. See Boyce Motor Lines v. United States,[19] 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

### D. The First Amendment.

Section 6 of L.B.991 makes it illegal to promote the sale of drug paraphernalia by advertising in any publication.[20] The plaintiffs argue that this section suppresses the content of speech in violation of the First Amendment.

---

18. See e. g. 15 U.S.C. § 78a (dealing with the Foreign Corrupt Practices Act); 15 U.S.C. § 2614 (dealing with toxic substances); Neb. Rev.Stat. § 28–417(g) (dealing with controlled substances); Neb.Rev.Stat. § 28–515(3) (dealing with telecommunications).

19. The Court noted, however, that it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines at 340, 72 S.Ct. at 331.

20. It is possible that L.B.991 will have a chilling effect on First Amendment freedoms. For example, there is the danger that a publication advertising drug paraphernalia which originates in a state where the paraphernalia is

legal will be offered for sale in Nebraska. To avoid prosecution in this state an advertiser might well decide to forego his solicitation. It is not difficult to imagine other circumstances where the statute might dissuade the expression of protected speech. Nevertheless, the statute is susceptible to a narrow interpretation by state courts and thus should not be declared facially unconstitutional here. See Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Section 6 could logically be construed as applying only to advertisements which indicate that paraphernalia is available in Nebraska.

*Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) is cited for the proposition that the state cannot restrict advertisements solely because of their content. In *Bigelow*, the Supreme Court overturned the conviction of a Virginia newspaper editor for publishing an advertisement containing information about abortion services available in New York. While observing that advertising "enjoys a degree of First Amendment protection" the Court made clear that not all advertisements are immune from regulation. "Advertising, like all public expression, may be subject to reasonable regulation that serves a legitimate public interest." *Id.* at 826, 95 S.Ct. at 2234. The advertisement was protected by the First Amendment in *Bigelow* because it provided factual information of a clear public interest about activity which "pertained to constitutional interests."

In the present case, neither of those factors are present. An advertisement promoting the sale of drug paraphernalia does not contain factual information in the same sense as an advertisement describing the availability of abortion services. There is certainly no "constitutional interest" in the possession of drug paraphernalia. *Cf. Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) is dispositive of plaintiffs' First Amendment argument. There, the Court upheld a Pennsylvania ordinance forbidding newspapers from carrying purely commercial help wanted advertisements in sex-designated columns. The Court noted that under the ordinance "[d]iscrimination in employment is not only commercial activity, it is *illegal* commercial activity." *Id.* at 388, 93 S.Ct. at 2560. The fact that the commercial activity was itself illegal was critical to the Court's holding:

Any First Amendment interest which might be served by advertising an ordinary commercial purpose and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity.

*Id.* at 389, 93 S.Ct. at 2561. As in *Pittsburgh Press*, the commercial activity in this case is illegal. L.B.991 makes the delivery, possession and use of drug paraphernalia illegal. Clearly the statute's restriction on the advertisement of drug paraphernalia is merely incidental to its proscription. It would be strange indeed to find that the First Amendment protects the solicitation of otherwise criminal activity. The Court in *Pittsburgh Press* made clear that it does not. In short, L.B.991 can constitutionally prohibit the advertisement of what it otherwise proscribes.

E. *The Fourth Amendment.*

Plaintiffs vigorously contend that L.B.991 violates the Fourth Amendment's prohibition of unreasonable searches and seizures. They fear that the statute permits searches without the requisite showing of probable cause. According to plaintiffs, a police officer who sees one of the items listed in section 1 could, without more, seize it. "The real danger of the Act is that it permits searches based upon a police officer's sighting of any article listed in Section 1 which items 'sitting in the air' are not illegal." Plaintiffs Post Trial Brief at 8. This argument completely ignores both the statute's definition of drug paraphernalia and the fourteen factors listed in section 2 which a police officer must consider in determining if an object is drug paraphernalia. Under the statute, no item "sitting in the air" is paraphernalia. To determine if a particular object is outlawed an officer is compelled by the statute to consider the various elements set out in section 2. When Delaware's Model Drug Paraphernalia Act was challenged on Fourth Amendment grounds, the Court pointed out that:

Nothing in the Act . . . dilutes the Fourth Amendment probable cause standard and there is no reason to believe that its application will be any more difficult or uncertain in the context of the Act than in the context of any of the

488

other multitude of statutes that proscribe otherwise innocent conduct when accompanied by the intent to commit or facilitate a crime.

*Delaware Accessories Trade Assn. v. Gebelein, supra* at 296. There is simply nothing in L.B.991 which alters the requirement that searches and seizures must be based upon probable cause.

Nor can there be any serious objection to the forfeiture provisions set out in section 7 of the Act. That section provides for the seizure and forfeiture of all drug paraphernalia. Any question about the constitutionality of civil forfeiture was laid to rest by the Supreme Court in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In that case, the Court upheld the seizure and forfeiture of a Yacht which was carrying a controlled substance. The seizure occurred without prior notice or hearing and without the lessor even being aware that the lessee was using the vessel for an unlawful purpose. The State of Nebraska has a significant interest in preventing drug abuse. In furtherance of that interest the State may seize and confiscate the instrumentalities which facilitate illicit drug use.

F. *The Commerce Clause.*

 It is contended that L.B.991 will unreasonably burden interstate commerce in violation of the commerce clause of the United States Constitution. Article I, Section 8, Clause 3. The applicable law is found in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found then the question be-

comes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues....

(citations omitted). *Pike* sets out a three tiered inquiry. Does the statute evenhandedly serve a legitimate local public interest; does the legislation have only an incidental effect on interstate commerce; and, does the local public interest justify the statute's impact on interstate commerce.

When this test is applied to L.B.991 it is clear that the statute does not impermissibly burden interstate commerce. The first part of the test is met because the state, in providing for the welfare of its citizens, may legitimately regulate both illicit drugs and drug related devices. *Geiger, supra.* The second tier is met because the statute has only an incidental affect on interstate commerce. L.B.991 only regulates items which the statute defines as drug paraphernalia; namely, those items which are used, intended for use, or designed for use with a controlled substance. It has no effect on any item which is used in a legitimate manner—plaintiffs concede that practically all drug paraphernalia can be used for some legal purpose. Thus, the definition of drug paraphernalia limits not only the reach of the statute but its impact on interstate commerce. Finally, the Court concludes that the public interest in curtailing the now chronic problem of drug abuse far outweighs the statute's *de minimus* impact on interstate commerce. L.B.991 does not impermissibly burden commerce between the several states.

CONCLUSION

L.B.991 may not be easy to enforce nor is it likely that it will single-handedly ameliorate the problem of drug abuse. Nonetheless, as it is construed herein, the statute does not run afoul of the Federal Constitution. This Court does not inquire further.

Counsel for the defendants shall prepare and submit a formal decree and judgment in accordance with this Memorandum and submit same to counsel for the plaintiffs for approval as to form only. Said decree and judgment shall be submitted to the Court on or before five (5) days of the date hereof.