RECORD MUSEUM, Jerry Green,
Plaintiffs,

v.

LAWRENCE TOWNSHIP, William F.
Seabridge, Frank P. Nerwinski, Herman
W. Hanssler, Robert W. Kusek, Mary C.
Tanner, Joseph P. Dallepazze, Defendants.

Civ. A. No. 79–3352.

United States District Court,
D. New Jersey.

Dec. 11, 1979.

Ann E. Nelson, Benjamin N. Cittadino, Pellettieri, Rabstein & Altman, Trenton, N. J., for plaintiffs.

Harry Heher, Jr., Heher & Clarke, Princeton, N. J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, Jerry Green, co-owner of Record Museum, a retail establishment located at Quaker Bridge Mall, Lawrenceville, New Jersey,[1] instituted this action seeking de-

claratory and injunctive relief for alleged violations of his civil rights. He asserts a cause of action arising under 42 U.S.C. §§ 1983 and 1985 and under 28 U.S.C. §§ 2201 and 2202. Jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1343(3) and (4).

The defendants are the Township of Lawrence, New Jersey, and its mayor, chief of police, and members of the Township council.

The matter was heard on plaintiff's application for a preliminary injunction, a temporary restraining order having been denied eight days earlier. Prior to the hearing, the parties agreed, pursuant to *Fed.R.Civ.P.* 65(a)(2), that the trial of the action on the merits would be advanced and consolidated with a hearing on the application for a preliminary injunction. An order to that effect was entered from the bench.

## FINDINGS OF FACT

The facts are as follows:

Record Museum is a retail establishment which conducts its business in Quaker Bridge Mall, the largest shopping center in Lawrence Township. It specializes in the sale of records and novelty items and is open and available to all members of the public who utilize the mall.

Prior to April 18, 1979, Record Museum sold numerous publications and accessories which are unmistakably oriented to drugs such as marijuana, cocaine, hashish, mushrooms having mind-affecting properties and to the many uses of such drugs.

The publications included the following: (i) *High Times*, a slick magazine identifying itself as "The Magazine of High Society" and devoted to drug-related topics such as mushroom cults, how to avoid detection by law-enforcement officers when smuggling narcotics, and sex and drugs; (ii) *Cooking with Marijuana*, the subject of which is, as its name implies, using that particular drug in performing the culinary arts; (iii) *Con-*

---

1. The caption of the case lists Record Museum as a plaintiff. However, Record Museum is not a separate legal entity and is simply the name under which Jerry Green and his partner, Jared Weinstein, conduct their business. Therefore, in this opinion Jerry Green has been treated as the sole plaintiff.

*noisseur's Handbook of Marijuana*; and (iv) a pseudo-scholarly volume entitled *High Times Encyclopedia of Recreational Drugs*, which touts itself as being "The most exhaustive mass market book ever published on drugs" and which devotes itself to such subjects as the history of drugs, growing and improving your own drugs, herbal highs, aphrodisiacs, drug laws, and much more.

Record Museum sold posters depicting such subjects as mushrooms having exotic properties and a greatly enlarged bud of Columbian Gold, a brand of marijuana. It sold The High Times Calendar, which has an attractive picture for each month of the year portraying a drug or drug-related subject.

In addition, plaintiff introduced in evidence a number of items which Record Museum sold prior to April 18, 1979, such as cigarette rolling papers, clips, hemostats and the like. Mr. John E. Neuman, who had been in the employ of the Record Museum for fourteen and a half years, professed not to know for what purposes people bought these items, but had he read the chapter in *High Times Encyclopedia of Recreational Drugs* entitled "Paraphernalia" (Exhibit P–25), he would have learned the following:

> Language changes. "Paraphernalia" adopted directly from the ancient Greek word for dowry (*paraphernos* [thing] carried beside) and used for three centuries to refer in general to optional accoutrements of wardrobe or military gear, today means primarily the vessels and tools of recreational drug use. These include a bewildering variety of pipes, hookahs, chillums, bongs, carburetors, rolling papers, roach clips, herb cleaners, screens, razors, mirrors, syringes, paper and cellophane bags, and increasingly bizarre constructions of sheet metal, plumbing fixtures, rare Oriental woods and laboratory tubes and filters that look like discarded moonshine stills or alchemical astrolabes. As we shall see, paraphernalia has become technological subculture, rooted in the old American tradition

of the basement tinkerer and the backyard adventurer, watered by the capital of a rapidly-growing dope-paraphernalia industry, and harvested by a generation of bionic dopers who demand both scientifically sophisticated and environmentally balanced accessories to get high with. At page 285.

Mr. Neuman was slightly more familiar with drug-related uses of other items which Record Museum sold prior to April 18, 1979, examples of which plaintiff did not introduce as exhibits, but the sale of which was brought out on cross-examination—bongs, testing kits to determine if marijuana were contaminated, rollers and snorting hoses.

In March, 1979, William F. Seabridge, Lawrence Township's Chief of Police, was requested by the Municipal Manager to investigate citizens' complaints about sales of drug paraphernalia in a number of retail outlets located in Quaker Bridge Mall. The police officers assigned to conduct the investigation reported to the Chief of Police, and he reported to the Town Manager, that there were five outlets in Quaker Bridge Mall which were selling drug paraphernalia, namely Record Museum, Music Scene, Shop of India, Oriental Pearl and John David, Ltd.

Chief Seabridge did not define the words "drug paraphernalia" in his affidavit filed in this action, nor did his written report to the Municipal Manager dated March 16, 1979, define that term. The report, however, was accompanied by ten photographs of displays at various of the five retail establishments at Quaker Bridge Mall (including Record Museum) which sold narcotics paraphernalia. These photographs disclosed a number of items of the nature referred to above, and the evidence shows that the terms "drug paraphernalia" or "narcotics paraphernalia" have a recognized meaning among law-enforcement people and among owners and patrons of establishments like the Record Museum.

On April 18, 1979, Lawrence Township adopted Ordinance No. 842–79 entitled "An Ordinance to Prohibit the Maintenance of Premises for the Sale or Display and the

Sale or Display for Sale of Narcotics Paraphernalia to Minors within the Township of Lawrence, County of Mercer, State of New Jersey".

Section 1 of the ordinance provides:

No person either as principal or as an employee, agent, or representative of a firm or corporation, nor any firm or corporation, shall advertise, display, sell or offer to sell, lease, distribute or give to minors, or maintain any premises therefor, any narcotics paraphernalia as defined herein.

Section 2 of the ordinance provides:

The term "narcotics paraphernalia" shall refer to any and all supplies, equipment, contrivances, appliances and devices designed for or customarily used in the preparation, testing, weighing, measuring or use or consumption of marijuana, cocaine, opium, hashish, PCP or any other controlled dangerous substances, all as defined in N.J.S.A. 24:21–1, et seq. or as said statute may from time to time be amended or supplemented, but also including butyl nitrates, laughing gas, and other anesthetics.

Section 3 of the ordinance provides:

Not by way of limitation of the provisions of the foregoing section 2 of the Ordinance, but within the context thereof, the term narcotics paraphernalia shall expressly include, but not be limited to, any syringe, needle, eye dropper, spoon, "bong" or other pipe, testing kit, roach clip, rolling paper, roller, "snorting" hose, mask or equipment, or anesthetic container.

The ordinance contains other provisions, including a prohibition against permitting minors to enter premises where narcotics paraphernalia is displayed or sold, a prohibition against advertising or displaying narcotics paraphernalia to minors within or outside the premises and exempting from the application of the ordinance licensed pharmacists and their premises, licensed medical practitioners and their premises and certain other persons and activities. A fine and/or prison term is specified for violation of the ordinance. It contains a severability clause.

The citizens' complaints to the Town Manager and the adoption of the ordinance did not occur in a social vacuum. Plaintiff's brief refers to the use of drugs as "rooted in the social ills of our times". His brief also invites the Court to "take judicial notice of the phenomenon known as the Counterculture of the Seventies wherein untraditional attire such as spoons and hand-crafted pipes adorn both home and person." The Court will take judicial notice of those facts, *Fed.R.Evid.* 201. Further, plaintiff's own evidence establishes that in addition to their many innocent and beneficent uses, syringes, needles, eye droppers, spoons, "bongs" or other pipes, testing kits, roach clips and rolling papers are sometimes the means used for taking drugs and collectively are to many the symbol and mark of the drug culture. It is not without significance that retail establishments which sell these items as a distinct line of trade (as Record Museum, Music Scene, Shop of India, Oriental Pearl and John David, Ltd. once did) are commonly known as "head shops".

It is a reasonable assumption that the purpose in enacting Ordinance No. 842–79 was not only to discourage illegal use of those devices but also to insulate the insecure, the immature and the weak among Lawrence Township's youth from the suggestive lure of these drug symbols and their devotees in the head shops at Quaker Bridge Mall.

After the Lawrence Township Council adopted Ordinance 842–79 on April 18, 1979, the Township's Police Department checked the five retail outlets which previously had sold items defined in the ordinance as narcotics paraphernalia. On the occasion of the first inspection all, including the Record Museum, had discontinued their sales except Shop of India and, with respect to one prohibited item, John David, Ltd. By May 1, 1979, all were in compliance, and the Chief of Police was of the opinion that they remained in compliance to the date of the hearing on plaintiff's application for a preliminary injunction.

Although in his affidavit plaintiff stated, "I am not certain what is specifically covered by the Ordinance", neither the Lawrence Township police officers nor the owners of the retail establishments appeared to have any difficulties in determining what items were included within the reach of the ordinance. In fact, plaintiff's instructions to his employees were to take out everything from the shop which anyone would consider drug-related. What was taken out were the articles which *High Times Encyclopedia of Recreational Drugs* characterizes as "paraphernalia" and, in addition, the drug-oriented publications and posters.

Plaintiff asserts in his affidavit, and it is not contradicted, that, confronted with the ordinance, he removed from his store all advertising and items which might be covered by the ordinance and that "as a direct result of Ordinance No. 842–79 my business has been severely curtailed and continues to be severely curtailed. Because of the Ordinance I would estimate that we have lost approximately $2,000 per week in business over the past seven months."

### THE PENDING PROCEEDING

Although Ordinance No. 842–79 was adopted on April 18, 1979, plaintiff did not commence this action until November 21, 1979, at which time he also sought a temporary restraining order.

The complaint alleges that the ordinance deprives plaintiff of his right of free expression, his right to be free from unreasonable searches and seizures, his right to privacy and his right to due process and equal protection under the laws, all in violation of his rights guaranteed by the Commerce and Contract Clauses of the United States Constitution, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, the First, Fourth and Ninth Amendments to the United States Constitution, and the Bill of Attainder Clause of the United States Constitution.

The application for a temporary restraining order was denied on the grounds that plaintiff, having waited for more than seven months to institute this suit, it would not be unreasonable to withhold relief, if warranted, until a more adequate record could be created and fuller argument presented at a hearing on an application for a preliminary injunction. Such a hearing was held, at which time, as noted above, the trial of the action on the merits was advanced and consolidated with that hearing.

### CONCLUSIONS OF LAW

Three principal legal questions are presented: first, should a federal court hear this matter at all; second, if the Court should hear the matter, does Ordinance 842–79 violate plaintiff's constitutionally-protected rights; and, third, if plaintiff's constitutional rights have been violated, what relief should this Court grant.

■ Turning first to the question whether the Court should hear this matter, the complaint alleges Ordinance 842–79 deprives plaintiff of rights to which he is entitled by virtue of the Constitution of the United States. The action is, therefore, within the scope of 42 U.S.C. § 1983, and jurisdiction is conferred by 28 U.S.C. § 1331 and § 1343(3) and (4).

■ Defendants question whether the $10,000 jurisdictional limit specified in 28 U.S.C. § 1331 has been met, but no jurisdictional amount is required in an action asserting jurisdiction under § 1983. *Fischer v. Cahill,* 474 F.2d 991 (3d Cir. 1973). Defendants also advance the argument that plaintiff failed to pursue remedies available to him to challenge the ordinance in the state courts. The general rule in actions under § 1983 is that state remedies need not be exhausted as a prerequisite to federal jurisdiction. *United States ex rel. Ricketts v. Lightcap,* 567 F.2d 1226 (3d Cir. 1977).

■ No criminal proceedings or other proceedings in aid of Ordinance 842–79 have been instituted in the state courts, and, therefore, the Court is not required to refrain from acting under the principles set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or *Huff-*

man v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

Nor does it appear the Court should abstain from deciding the case under criteria set forth in D'Iorio v. County of Delaware, 592 F.2d 681 (3d Cir. 1978).

The Court, therefore, has jurisdiction and should decide this case.

■ Turning to the question whether the ordinance violates plaintiff's constitutionally protected rights, the Court concludes that the ordinance is unconstitutional on two counts. First, it is void for vagueness and, second, by reason of its over-breadth it impinges unlawfully upon plaintiff's First Amendment rights of free speech.

The ordinance provides that no person "shall advertise, display, sell or offer to sell, lease, distribute or give to minors, or maintain any premises therefor, any narcotics paraphernalia . . ." The term "narcotics paraphernalia" is defined as "all supplies, equipment, contrivances, appliances and devices designed for *or customarily used* in preparation, testing, weighing, measuring or use or consumption of marijuana, cocaine, opium, hashish . . ." (emphasis added).

Certain examples of narcotics paraphernalia are set forth in the ordinance, all of which have many innocent uses. These would include, syringes, needles, eye droppers, spoons, and other objects referred to in the ordinance. The listing of these specific items does not exclude other items from being deemed narcotics paraphernalia if they are found to be designed for or customarily used in connection with drugs.

This ordinance is not and could not lawfully be made applicable only to head shops. All citizens must guide their conduct in accordance with its prohibitions. All are forbidden to advertise or sell to minors any device "customarily used" in the preparation or use of any of the designated drugs, no matter how innocent the device may be in its normal context.

In this light the ordinance "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden", Colautti v. Franklin, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). As stated in Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" ' . . . than if the boundaries of the forbidden areas were clearly marked. At 108, 109, 92 S.Ct. at 2298–2299.

The danger of discriminatory application of the Lawrence Township ordinance is illustrated by the fact that the Township Police apparently investigated only the five head shops in Quaker Bridge Mall, and as far as the evidence discloses, did not investigate to determine if any other retail outlets were advertising or selling to minors such items as eye droppers, spoons, pipes or rolling paper. See Smith v. Goquen, 415 U.S. 566, 575, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1973). The conclusion is inescapable that

the ordinance, though broad in its terms, is aimed at a very small target—head shops.[2]

The prohibitions contained in the ordinance against advertising to minors create an additional defect which frequently attends a vague and indefinite statute—"The uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights", namely First Amendment rights of free speech. *Colautti v. Franklin, supra; Smith v. Goquen, supra; Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

The prohibitions against advertising to minors might well be broad enough to encompass the sale of the books and magazines described above, although in view of the serious constitutional questions which such an interpretation would entail, it is quite possible a New Jersey court would exclude those items from the reach of the ordinance.

However, a free speech right which is unquestionably involved here is the right to advertise to minors the various products coming within the definition of narcotics paraphernalia, products which may have innocent and even beneficent uses. As a practical matter, prohibiting advertising to minors prohibits advertising to everyone, because it would be a practical impossibility to insulate the young from advertisements transmitted outside the store premises. To avoid transmitting messages to minors, it would be necessary to refrain from transmitting messages to anyone.

Clearly, plaintiff here is no heroic figure manning constitutional barricades in order to espouse unpopular political or religious beliefs. He seeks the protection of the United States Constitution in order to resume the sale of articles which, while they have many innocent uses, are also both the tools and badge of drug abuse. He wishes to start receiving once again the $2,000 per week which the sale of these articles puts in his pockets.

However, even speech which is not designed to enlighten decision-making or advance religious beliefs and which has only a commercial purpose is entitled to First Amendment protection. *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Speech in the commercial context may not be subject to the First Amendment over-breadth doctrine under which an attack upon an overly broad statute may be made without requiring that the person making the attack demonstrate that his specific conduct was protected. *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). However, in the present case plaintiff has shown that his own advertising is threatened and therefore under *Bates* he can bring this action to attack the ordinance.

Defendants assert that the ordinance can be upheld, and that this case can be distinguished from other cases in this district invalidating similar ordinances, by reason of the fact that by its terms this ordinance is applicable only to minors. Defendants point to the various cases and statutes which permit or require different treatment of minors in the sale of sexually-oriented materials, the sale and use of alcohol and admission to saloons and dance halls.

In particular, defendants direct the Court's attention to *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), in which the Supreme Court held that when dealing with sexually-oriented materials the State of New York could constitutionally impose greater restrictions upon minors than were imposed upon adults.

However, these considerations do not reach the defects in the Lawrence Township

---

**2.** The defendants have submitted copies of New Jersey Assembly Bill No. 1594 and Senate Bill No. 3069, each of which prohibits the manufacture and sale of narcotics paraphernalia. Defendants' attorney has advised the Court that A.1594 has passed both Houses and is awaiting action by the Governor.

No view is expressed as to the validity or invalidity of those bills if they are enacted into law. Sufficient to note that they have significant similarities to, and significant differences from, Ordinance 842–79.

ordinance. No one is arguing that the Township may not impose stricter rules for drug use upon minors than are imposed upon adults. That is not the issue in the case.

 It has been concluded that the ordinance is vague and that its reach is overbroad, impinging on First and Fourteenth Amendment rights. · This defect is not cured by the fact that it is intended to reach only advertising and sales to minors rather than advertising and sales to adults. In either case, it remains vague and overbroad.

Turning finally to the question of what relief this Court should grant, the Court is aware of three cases dealing with similar ordinances. Each case accorded different relief.

In *Fanning v. Hillsdale* (New Jersey District Court Civil No. 79–1540), Chief Judge Fisher, upon plaintiff's application for a preliminary injunction, found that plaintiff would probably be successful on at least her due process challenge to the ordinance's vagueness and that plaintiff had established the other requirements for preliminary injunctive relief specified in *Construction Association of Western Pennsylvania v. Kreps,* 573 F.2d 811 (3d Cir. 1978). A preliminary injunction against enforcement of the Paramus ordinance issued.

In *Bambu Sales, Inc. v. Gibson,* 474 F.Supp. 1297 (D.C.N.J.), Judge Biunno considered Newark's narcotics paraphernalia ordinance. Finding that the plaintiff's constitutional rights were impaired by the over-breadth of the ordinance, he granted a declaratory judgment, but denied injunctive relief, stating that should the government officials not honor the judgment "plaintiff remains free to seek injunctive relief by way of execution or enforcement of the declaratory judgment".

In *Record Head, Inc. v. Olson,* 476 F.Supp. 366 (N.D.1979), plaintiff sought a declaratory judgment and monetary relief from the effects of a North Dakota narcotics paraphernalia statute. The court held the matter was not a proper one for application of the doctrine of abstention, but it declined to issue a preliminary injunction. It ruled that a showing of a threat or a possibility of criminal prosecution and a showing of a continuing loss of profits did not constitute great and immediate harm, i. e., there was no irreparable injury.

 On the basis of the facts established in the present matter and on the basis of the legal principles which have been recited, the Court has concluded that Ordinance No. 842–79 of Lawrence Township is invalid in its entirety. Notwithstanding the possibly adverse social consequences of the sales he wishes to make, plaintiff is threatened with prosecution under an impermissibly vague ordinance and with irreparable injury to his constitutional right of free speech for which there is no adequate remedy at law. A money award for lost profits could not compensate for the loss of these most important constitutional rights.

It is the Court's view that the final judgment should include a declaration that the ordinance is invalid by reason of its vagueness and over-breadth and that an injunction against its enforcement should issue. Including both declaratory and injunctive relief will prevent any uncertainty as to what is intended and avoid the necessity of returning to the Court for further relief.

Plaintiff's attorneys should prepare a form of final judgment consistent with this opinion. No costs will be allowed in the judgment, but if plaintiff makes application for attorney's fees pursuant to 42 U.S.C. § 1988, his disbursements will be considered at that time.