651 F.2d 551
 The CASBAH, INC.; The Disc Counter, Inc.; and Jeff Ferber,
d/b/a H & D Sales; Greg Hasselhorst, d/b/a Euphoria; Eric
Listou, d/b/a Joint Venture Novelty Shop, Pipe Dream, Inc.;
Dennis Robinson, d/b/a The Joynt, Appellants,
v.
Charles THONE, Governor for the State of Nebraska; Paul
Douglas, Attorney General for the State of Nebraska; Elmer
Kohmepsher, Colonel in Charge of the Nebraska State Patrol;
Donald L. Knowles, County Attorney for Douglas County,
Nebraska, Appellees.
The CASBAH, INC.; The Disc Counter, Inc.; and Jeff Ferber,
d/b/a H & D Sales; Greg Hasselhorst, d/b/a Euphoria; Eric
Listou, d/b/a Joint Venture Novelty Shop, Pipe Dream, Inc.;
Dennis Robinson, d/b/a The Joynt, Appellees,
v.
Charles THONE, Governor for the State of Nebraska; Paul
Douglas, Attorney General for the State of Nebraska; Elmer
Kohmepsher, Colonel in Charge of the Nebraska State Patrol;
Donald L. Knowles, County Attorney for Douglas County,
Nebraska, Appellants.
 Nos. 80-1925, 80-2033.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1980.
Decided June 8, 1981.
Rehearing and Rehearing En Banc Denied July 9, 1981.
 
 Donald B. Fiedler, Omaha, Neb., for plaintiffs-appellants.
 Marion Yoder, Nebraska Civil Liberties Union, Lincoln, Neb., for amicus curiae.
 Paul L. Douglas, Atty. Gen., Patrick T. O'Brien, Asst. Atty. Gen. (argued), Lincoln, Neb., Henry L. Wendt, Deputy Douglas County Atty., Arthur D. O'Leary, Steven E. Achelpohl, of Dwyer, O'Leary & Martin, P. C., Omaha, Neb., for appellees and cross-appellants.
 Before HENLEY, Circuit Judge, BENNETT,* Court of Claims Judge, and McMILLIAN, Circuit Judge.
 HENLEY, Circuit Judge.
 
 
 1
 This action is before the court on an appeal and cross-appeal involving the constitutionality of a recently enacted Nebraska statute, Legislative Bill 991, 1980 Neb.Laws ("LB 991"),[1] which prohibits the use, sale and manufacture of "drug paraphernalia." Plaintiffs, appellants here, are wholesale distributors and retail merchants. Defendants, appellees here, include Charles Thone, the Governor of Nebraska; Paul Douglas, Attorney General for the State of Nebraska; Elmer Kohmetscher (alternately identified as Elmer Kohmepsher) of the Nebraska State Patrol; and Donald L. Knowles, County Attorney for Douglas County, Nebraska.
 
 
 2
 The district court[2] sustained the constitutionality of the statute after severing certain phrases and construing the meaning of other language. With due respect for the district court's thoughtful opinion, we reverse those portions of the court's ruling severing phrases as unconstitutional and hold LB 991 constitutional as against the challenges we are called upon to consider and determine.
 
 
 3
 * A. Proceedings Below.
 
 
 4
 Appellants on April 23, 1980 filed their action in district court, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202 on the grounds that LB 991 abridges fundamental constitutional rights protected by the first, fourth, fifth and fourteenth amendments to the United States Constitution. Pursuant to an agreement of counsel, the district court on the same date entered an order temporarily restraining the enforcement of LB 991 pending a final determination on the merits. On September 4, 1980 the court held a consolidated hearing on the application for preliminary and permanent injunctions, with the result that by lengthy memorandum filed September 26, 1980 the court found the statute constitutional as construed. Pursuant to this memorandum opinion, the court's temporary restraining order was dissolved. This court granted appellants' application for stay of judgment pending appeal.
 
 
 5
 B. LB 991.
 
 
 6
 LB 991 is based on the Model Drug Paraphernalia Act (Model Act) drafted by the Drug Enforcement Administration (DEA) of the United States Department of Justice. In a Prefatory Note to the Model Act, the DEA acknowledged that the Model Act was drafted with the aim of overcoming constitutional infirmities that have rendered other drug paraphernalia laws subject to constitutional attack.[3] In the present appeal, we are essentially asked to decide whether this effort has been successful.[4]
 
 
 7
 The structure of LB 991 is somewhat complex and deserves summary here. Sections 1 and 2 are definitional. In Section 1, drug paraphernalia is defined as "all equipment, products, and materials of any kind which are used, intended for use, or designed for use" in manufacturing or ingesting controlled substances. A lengthy list of examples follows, with each example restating the requirement that the named object be "used, intended for use, or designed for use" in drug-related activities. The list of examples concludes with the catchall category of "objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body," followed by another list of thirteen exemplary items such as pipes of various types, miniature cocaine spoons, and roach clips. Although the enumeration of specific items is similar to that found in statutes which have been held unconstitutional,[5] LB 991 is significantly different in coupling the named items to the mental element of intent.
 
 
 8
 Section 2 of LB 991 names fourteen factors which "a court or other authority shall consider, in addition to all other logically relevant factors," in determining whether an object is drug paraphernalia.
 
 
 9
 Section 3 defines the substantive criminal offense of using, or possessing with intent to use, drug paraphernalia.
 
 
 10
 Section 4 defines the substantive criminal offense of delivery, possession with intent to deliver, or manufacture with intent to deliver drug paraphernalia, when the deliverer, possessor or manufacturer knows or reasonably should know that the drug paraphernalia will be used with controlled substances.
 
 
 11
 Section 5 makes delivery of drug paraphernalia to a minor a special offense.
 
 
 12
 Section 6 makes criminal the placing of any written advertisement when one knows or reasonably should know that the purpose of the advertisement is to promote the sale of objects designed or intended for use as drug paraphernalia.
 
 
 13
 Finally, LB 991 contains a civil forfeiture section and a severability section.
 
 
 14
 The district court, in an as-yet unpublished opinion, The Casbah, Inc. v. Thone, 512 F.Supp. 474 (D.Neb.1980), held the statute to be constitutional after severing subsection (11) of Section 2, which requires courts and law enforcement officials to consider whether a person is a "legitimate supplier" of like items. Also severed as unconstitutionally vague was the provision in Sections 4 and 6 for prosecution where the defendant "reasonably should know" the effects of his actions.
 
 
 15
 C. Issues on Appeal.
 
 
 16
 Appellants raise four issues on appeal. First, they contend that the district court erred in failing to review the Nebraska statute under a strict scrutiny standard of review. Second, they contend that the district court usurped the legislature's function by substantially rewriting the statute. Appellants' third contention is that the statute as written is impermissibly vague and overbroad. Finally, appellants contend that the district court erred in finding that the statute does not violate fourth amendment rights against unreasonable searches and seizures.
 
 
 17
 The Nebraska Civil Liberties Union appears as amicus curiae for the limited purpose of arguing that Sections 6 and 7 of the statute, pertaining to advertising and civil forfeiture of written materials, offend the first amendment.
 
 
 18
 Appellees by cross-appeal allege that the district court erred in holding the "legitimate supplier" provision of Section 2(11) unconstitutionally vague, and in holding the "reasonably should know" standard in Sections 4 and 6 unconstitutionally vague.
 
 
 19
 We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. The parties have raised no challenge on jurisdictional grounds and have not asked us to abstain.[6] Hunt v. Roth, 648 F.2d 1148 (8th Cir. 1981).D. Standard of Review.
 
 
 20
 In dealing with the merits of appellants' constitutional challenge, we have considered the standard of review to be applied. Appellants contend that a standard of strict scrutiny applies because LB 991 implicates first amendment rights and "a right to privacy under the fourth amendment."
 
 
 21
 We omit for the moment the matter of first amendment rights, reserving this issue for Section V, infra. Appellants' argument regarding the right to privacy is wholly without merit. It is true that the fourth amendment embraces the right to be free from unreasonable governmental intrusions into traditionally private areas, Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); United States v. Houle, 603 F.2d 1297, 1300-01 (8th Cir. 1979) (and citations therein). Here, however, for reasons indicated in Section IV, infra, neither fourth amendment rights nor privacy rights are implicated in LB 991. LB 991 on its face creates no classifications and applies equally to everyone. Where no suspect classifications are involved and no fundamental rights, the question under equal protection analysis is whether the legislation is reasonably related to a legitimate state purpose. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); Mid-Atlantic Accessories Trade Association v. Maryland, supra, 500 F.Supp. at 849. Similarly, we apply here the rational basis standard of review.
 
 II
 
 22
 Two considerations are basic to our decision on the merits. The first is our belief that we are empowered to articulate the meaning of the drug paraphernalia statute in a manner which supports a finding of constitutionality. The second is our conclusion that the element of intent saves the Nebraska statute from unconstitutional vagueness. On each matter, after careful consideration, we reach a different conclusion from that of the Sixth Circuit, the only other Court of Appeals to have considered the Model Act. Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d 916.
 
 
 23
 Appellants' first contention is that the district court exceeded its authority in construing and severing the Nebraska statute so as to render it constitutional.
 
 
 24
 We recognize that a federal court must take a state statute as written and cannot find the statute constitutional by remedying the defects which render it imprecise. Hynes v. Mayor of Oradell, 425 U.S. 610, 622, 96 S.Ct. 1755, 1761, 48 L.Ed.2d 243 (1976). See also Smith v. Goguen, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974); Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). Only the state courts may authoritatively construe state legislation. Id.; United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971). We are not prevented, however, from "extrapolat(ing) allowable meaning." Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). Obviously, a federal court must determine what a state statute means before judging its facial constitutionality. Broadrick v. Oklahoma, 413 U.S. 601, 618 n.16, 93 S.Ct. 2908, 2919, 37 L.Ed.2d 830 (1973).
 
 
 25
 Viewing LB 991 as a whole and construing its facial terms within the limits of our judicial powers, we conclude that the statute is constitutional. But see Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 927 (Sixth Circuit opinion is shaped by the court's "lack of power to put a limiting construction on the municipal ordinances."). We conclude that the language of the Model Act supports a saving construction which we are empowered to articulate, cf. Florida Businessmen for Free Enterprise v. Florida, 499 F.Supp. 346, 352 (N.D.Fla.1980) (statute offered no language to support judicial restructuring) and we are obliged to favor an interpretation which renders the statute constitutional. United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); Turchick v. United States, 561 F.2d 719, 723-24 (8th Cir. 1977); Tollett v. United States, 485 F.2d 1087, 1098 (8th Cir. 1973).
 
 III
 
 26
 The heart of appellants' case is the contention that LB 991 is unconstitutionally vague and overbroad, in violation of the due process clause of the fourteenth amendment. The issues of vagueness and overbreadth have been extensively discussed in nearly every case involving the Model Act. For this reason, our discussion is abbreviated. We rely upon the reasoning of those courts which have concluded that the Act survives these constitutional challenges.[7]
 
 
 27
 We turn first to the issue of vagueness. As this court recognized in Geiger v. City of Eagan, supra, 618 F.2d at 28, due process has two requirements: that laws provide notice to the ordinary person of what is prohibited and that they provide standards to law enforcement officials to prevent arbitrary and discriminatory enforcement.[8] Appellants contend that numerous phrases in LB 991 violate one or both of these constitutional criteria.
 
 
 28
 A. "Intended for Use."
 
 
 29
 Appellants argue first that the definition of drug paraphernalia in Section 1 as including "all equipment, products, and materials of any kind intended for use" (emphasis added) with controlled substances is impermissibly vague because the statute does not specify whose intent is relevant. The problem is characterized as one of "transferred intent," insofar as the intent of a second party could allegedly be attributed to an innocent party as a basis for prosecution. Appellants contend, for example, that the statute would permit prosecution of an innocent seller or manufacturer of an innocuous item such as a spoon, if the item were intended by a buyer for use with controlled substances.
 
 
 30
 We cannot subscribe to this interpretation of the statutory language. A fair reading of the statute as a whole indicates that the intent referred to is that of the person alleged to have violated the statute. What seems at first glance to be a deficiency in draftsmanship is explained by the fact that the definitional section is intended to draw four categories of persons (manufacturers, wholesalers, retailers and purchasers) within the reach of the legislation. Sections 3 and 4, in defining substantive offenses, provide clarity by linking the requirement of intent with the person whose activity is forbidden:
 
 
 31
 It shall be unlawful for any person to use, or to possess with intent to use, drug paraphernalia. (Section 3)
 
 
 32
 It shall be unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia. (Section 4)
 
 
 33
 In sum, the Nebraska statute adequately defines the mental state required to render an item drug paraphernalia and refers to the intent of the person charged with violation.[9] Accord, Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 928 & n.14; New England Accessories Trade Association v. Browne, supra, 502 F.Supp. at 1251; Mid-Atlantic Accessories Trade Association v. Maryland, supra, 500 F.Supp. at 844; Delaware Accessories Trade Association v. Gebelein, supra, 497 F.Supp. at 292-93.
 
 
 34
 B. "Designed for Use."
 
 
 35
 Appellants renew their argument regarding transferred intent in contending that paraphernalia cannot constitutionally be defined as items "designed for use" with controlled substances. Again, this definition is said to be defective in failing to specify whose design is relevant.
 
 
 36
 The same reasoning that saves the phrase "intended for use" applies to the phrase "designed for use." There is no basis for holding that the legislation escapes vagueness with respect to "intended for use" but fails with "designed for use." Mid-Atlantic Accessories Trade Association v. Maryland, supra, 500 F.Supp. at 845; Brache v. County of Westchester, supra, 507 F.Supp. at 577; but see Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 930.
 
 
 37
 Appellants also argue that the word "designed" refers to the physical attributes of an object rather than to the intent of the person charged with violation. The Sixth Circuit in Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 930-31, found this argument persuasive, and held that drug paraphernalia could not be adequately defined in terms of unique design characteristics.
 
 
 38
 We cannot agree that the term "designed" refers to the structure of an object. The comments to the Model Act expressly indicate the contrary, specifying that items are innocent until coupled with the intentional act of design. Accord, New England Accessories Trade Association, Inc. v. Browne, supra, 502 F.Supp. at 1251; Mid-Atlantic Accessories Trade Association v. Maryland, supra, 500 F.Supp. at 844-45; Delaware Accessories Trade Association v. Gebelein, supra, 497 F.Supp. at 291-92.
 
 
 39
 C. Exemplary Drug Paraphernalia.
 
 
 40
 Appellants also assert that the list of items exemplary of drug paraphernalia in Section 1[10] is vague and overbroad because it includes numerous innocent items, such as a diabetic's syringe and lactose used in infant formula.
 
 
 41
 We find no flaw in the list of exemplary items because no item is drug paraphernalia absent the requisite intent to use it with controlled substances. Cf. Record Museum v. Lawrence Township, supra, 481 F.Supp. 768 (list of paraphernalia, absent requirement of intent, was impermissibly vague, as there was no provision for distinguishing between innocent and non-innocent use). The language of intent is expressly reiterated in the list of items in Section 1(1)-(4).
 
 
 42
 D. Factors Relevant to Determining Drug Paraphernalia.
 
 
 43
 Appellants next attack Section 2 of the statute, which sets forth fourteen factors that must be considered in determining whether an object is drug paraphernalia. We find it unnecessary to reiterate the specifics of appellants' attack on each of the fourteen factors. Appellants contend essentially (1) that the reference to "other authority" is vague, and (2) that several of the factors would permit conviction based on transferred intent and guilt by association.
 
 
 44
 There is no perceptible problem in the statutory reference to authorities other than the courts who may utilize the list of enumerated factors in determining what is drug paraphernalia. "Other authority" certainly refers to law enforcement personnel. The fact that the statute attempts to guide such personnel in their enforcement duties lessens, rather than increases, the danger of arbitrary enforcement.
 
 
 45
 The enumerated factors themselves pose no constitutional problem, and are valuable guides in determining what items are prohibited. New England Accessories Trade Association v. Browne, supra, 502 F.Supp. at 1251. Admittedly, the actions of third parties are relevant in determining what is drug paraphernalia.[11] However, appellants overstate the problems of transferred intent and guilt by association by contending that third party actions are sufficient for conviction. In fact, evidence regarding third party actions is but one step in the prosecutorial scheme. If third party actions as referred to in Section 2, tend to indicate that an item is drug paraphernalia, the focus of inquiry must necessarily shift to the intent of the individual involved. Mid-Atlantic Accessories Trade Association v. Maryland, supra, 500 F.Supp. at 846-47; but see Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 933-34 (the list of logically relevant factors might permit conviction on the impermissible theory of guilt by association, but for due process requirement under Ohio law that guilt be based on personal action).
 
 
 46
 E. "Reasonably Should Know."
 
 
 47
 The final prong of appellants' vagueness argument involves the definition of substantive offenses in Sections 4 and 6. These sections make it unlawful to deliver, possess with intent to deliver, manufacture with intent to deliver or advertise drug paraphernalia in circumstances where one knows or "reasonably should know" that the items will be used with drugs (Section 4) or that the purpose of the advertisement is to promote the sale of drug paraphernalia (Section 6). Appellants allege, and the district court agreed, that the phrase "reasonably should know" will permit conviction under an impermissibly vague negligence standard, and will leave innocent sellers in the untenable posture of trying to divine the intentions of their buyers.
 
 
 48
 In addressing this contention, we cannot do better than to adopt the cogent reasoning of Judge Stapleton in Delaware Accessories Trade Association v. Gebelein, supra, which we set forth in the margin.[12] Essentially, Judge Stapleton noted that a seller must already have intended that the item be sold for drug use before his knowledge of its use by a buyer comes into play. Accord, Mid-Atlantic Accessories Trade Association v. Maryland, supra, 500 F.Supp. at 845. In these circumstances, it is not constitutionally improper that the seller be required to open his eyes to the objective realities of the sale. Id. As more than one court has noted, there are many statutes which utilize a "reasonably should know" or similar standard[13] and which have withstood constitutional attack. Delaware Accessories Trade Association v. Gebelein, supra, 497 F.Supp. at 294, citing Selzman v. United States, 268 U.S. 466, 45 S.Ct. 574, 69 L.Ed. 1054 (1925); United States v. Featherston, 461 F.2d 1119 (5th Cir.), cert. denied, 409 U.S. 991, 93 S.Ct. 339, 34 L.Ed.2d 258 (1972).[14]
 
 IV
 
 49
 Appellants' fourth amendment argument requires only cursory discussion.
 
 
 50
 Appellants allege, first, that the Nebraska statute would allow a police officer to seize an innocent item such as a pipe without probable cause. This argument ignores both the requirement of intent in the definition of drug paraphernalia, and the factors in Section 2 which an officer must consider in determining whether an object is drug paraphernalia. There is simply nothing in LB 991 which alters the requirement that searches and seizures be based on probable cause. Delaware Accessories Trade Association v. Gebelein, supra, 497 F.Supp. at 296; see also Mid-Atlantic Accessories Trade Association v. Maryland, supra, 500 F.Supp. at 848-49.
 
 
 51
 Secondly, appellants object to the provision for civil forfeiture of drug paraphernalia.[15] Section 7 of LB 991 adds "drug paraphernalia" to the list of items which are subject to civil forfeiture under Neb.Rev.Stat. § 28-431(1) (Supp.1978), as follows:
 
 
 52
 (1) The following shall be seized without warrant by an officer of the Division of Drug Control or by any peace officer, and the same shall be subject to forfeiture: ... (f) all drug paraphernalia defined in section 1 of this act.
 
 
 53
 The basis for appellants' objection to this provision is somewhat unclear. Insofar as the just compensation and due process provisions of the fifth and fourteenth amendments may allegedly be implicated in civil forfeiture, however, we note that forfeiture which helps to render illegal behavior unprofitable, without prior notice and hearing, has been approved by the Supreme Court in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The Supreme Court of Nebraska has also specifically approved as constitutional the provision for forfeiture of conveyances involved in drug traffic under the predecessor[16] of Neb.Rev.Stat. § 28-431 (Supp.1978). State v. One 1968 Volkswagen, 198 Neb. 45, 251 N.W.2d 666 (1977); State v. One 1970 2-Door Sedan Rambler (Gremlin), 191 Neb. 462, 215 N.W.2d 849 (1974). The provision for seizure of drug paraphernalia is analogous, and in our view, constitutional.[17]
 
 V
 
 54
 The final challenge to the Nebraska statute, raised by the Nebraska Civil Liberties Union (NCLU), is that first amendment interests are implicated in Sections 6 and 7.
 
 
 55
 The NCLU objects to subsection (1)(e) of Section 7, which permits the warrantless seizure ofbooks, records, and research, including formulas, microfilm, tapes, and data which are used, or intended for use in violation of the provisions of this article.
 
 
 56
 The validity of this provision is open to serious question. Blount v. Rizzi, 400 U.S. 410, 417, 91 S.Ct. 423, 428, 27 L.Ed.2d 498 (1971); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The statute does not provide for prompt judicial review of this prior restraint on expression, nor does it place the burden of initiating judicial review on censoring personnel. Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 559-60, 95 S.Ct. 1239, 1246-47, 43 L.Ed.2d 448 (1975); Blount v. Rizzi, supra; cf. United States v. Thirty-Seven Photographs, supra, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822.
 
 
 57
 We do not, however, reach these misgivings. Subsection (1)(e) belongs to preexisting law, Neb.Rev.Stat. § 28-431 (Supp.1978), and was not added to the Nebraska Code by LB 991. For the reasons indicated in n.15, supra, we decline to consider this statutory material.
 
 
 58
 First amendment objections are also raised to Section 6, which prohibits advertising that promotes, in whole or in part, the sale of objects designed or intended for use as drug paraphernalia. Although the issue may be close, we conclude that this ban withstands constitutional challenge. Our conclusion is based on three considerations: (1) the statute circumscribes only commercial speech; (2) the speech embraced by the statute directly promotes an illegal activity; and (3) the overbreadth doctrine does not apply to commercial speech to the same extent as it does to non-commercial speech.
 
 
 59
 We begin our analysis with the question whether the statute reaches only commercial speech. Since the statutory prohibition applies to "advertisement(s)," the answer might appear to be self-evident. However, we proceed mindful of a lack of a clear definition of commercial speech from the Supreme Court. See Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 561, 562, 100 S.Ct. 2343, 2348, 2349, 65 L.Ed.2d 341 (1980) (commercial speech is characterized alternately as "expression related solely to the economic interests of the speaker and its audience" and "speech proposing a commercial transaction"); but see id. at 579, 100 S.Ct. at 2358 (Stevens, J., and Brennan, J. concurring) (majority's description of commercial speech is both too broad and too narrow); Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771 n.24, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976) (commercial speech proposes a commercial transaction); Bigelow v. Virginia, 421 U.S. 809, 821, 95 S.Ct. 2222, 2232, 44 L.Ed.2d 600 (1975); Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 384, 385, 93 S.Ct. 2553, 2558, 2559, 37 L.Ed.2d 669 (1973) (speech is not rendered commercial by mere fact that it relates to an advertisement; critical feature is whether it proposes a commercial transaction).[18]
 
 
 60
 Here, the Nebraska statute forbids only "advertisement(s)" which promote the "sale of objects" designed or intended for use as drug paraphernalia. The statute facially does not reach speech which merely glorifies the drug culture without direct invitation to purchase specific items. Accordingly, we conclude that the statute regulates commercial speech in its narrowest sense, that is, speech which proposes a commercial transaction. But see Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 937. Such commercial speech is entitled to lesser protection than other constitutionally guaranteed expression. Central Hudson Gas & Electric Corp. v. Public Service Commission, supra, 447 U.S. at 563 & n.5, 100 S.Ct. at 2350; Nickens v. White, 536 F.2d 802, 804 (8th Cir. 1976) (per curiam); Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 832-33 (8th Cir. 1976).
 
 
 61
 The next step in first amendment analysis is to inquire whether the proscribed commercial speech involves a lawful activity. Commercial speech which promotes an illegal activity may be restricted without subjecting the restriction to scrutiny under a balancing test. Central Hudson Gas & Electric Corp. v. Public Service Commission, supra, 447 U.S. at 563-64, 566, 100 S.Ct. at 2350, 2351; Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, supra, 413 U.S. at 388, 93 S.Ct. at 2560; cf. Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969) (outside of commercial speech context, speech advocating violation of the law may be proscribed only where directed to inciting or producing imminent lawless action); see also Carey v. Population Services International, 431 U.S. 678, 701, 97 S.Ct. 2010, 2024, 52 L.Ed.2d 675 (1977) (advertisements could not be characterized as inciting or producing imminent lawless action); Comment, First Amendment Protection for Commercial Advertising, supra, 44 U.Chi.L.Rev. at 220, 242 n.197, 243 n.203.
 
 
 62
 Here, advertising promoting the sale of drug paraphernalia encourages activities which are otherwise crimes under Nebraska law. Such speech is analogous to advertisements promoting the sale of narcotics or soliciting prostitution, and may constitutionally be prohibited. Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, supra, 413 U.S. at 388, 93 S.Ct. at 2560. It would be illogical to permit Nebraska to prohibit the sale and possession of drug paraphernalia while not allowing the state to regulate advertising which encourages these same crimes.
 
 
 63
 We acknowledge some difficulty in upholding the phrase "in part," which in Section 6 prohibits advertisements that only "in part" have the purpose of promoting the sale of drug paraphernalia. Arguably, this statutory language reaches into the protected area of advertising concerning lawful activity.
 
 
 64
 We are obliged, however, to presume a legislative intent to act within constitutional bounds. Turchick v. United States, supra, 561 F.2d at 723-24. Accordingly, we conclude that where drug paraphernalia is advertised along with innocent items, obviously the statute must forbid only that part of the advertisement relating to drug paraphernalia. The remainder of the advertisement is not condemned.[19]
 
 
 65
 In sum, we affirm in part and reverse in part the judgment of the district court. As indicated, we hold LB 991 to be constitutionally valid as against the challenges we have considered.[20]
 
 
 
 *
 Marion T. Bennett, Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 Legislative Bill 991 was enacted April 23, 1980 and became effective April 24, 1980. The statute is codified at Neb.Rev.Stat. §§ 28-101, 28-431, and 28-439 to 28-444. (Supp.1980)
 
 
 [2]
 The Honorable Richard E. Robinson, United States Senior District Judge for the District of Nebraska
 
 
 [3]
 See, e. g., statutes which have been held unconstitutional in Geiger v. City of Eagan, 618 F.2d 26 (8th Cir. 1980); Record Head Corp. v. Sachen, 498 F.Supp. 88 (E.D.Wis.1980); Magnani v. City of Ames, Ia., 493 F.Supp. 1003 (S.D.Ia.1980); Music Stop, Inc. v. City of Ferndale, 488 F.Supp. 390 (E.D.Mich.1980); Knoedler v. Roxbury Township, 485 F.Supp. 990 (D.N.J.1980); Record Museum v. Lawrence Township, 481 F.Supp. 768 (D.N.J.1979); Bambu Sales, Inc. v. Gibson, 474 F.Supp. 1297 (D.N.J.1979); Smith v. Roark, No. 80-2110 (S.D.W.Va. May 13, 1980); Indiana Chapter, N.O.R.M.L., Inc. v. Sendak, No. TH 75-142-C (S.D.Ind. Feb. 4, 1980)
 
 
 [4]
 LB 991 tracks the Model Act while omitting those portions relevant to the propagation and harvesting of drugs. For purposes of this appeal, the single significant variation from the Model Act occurs in Section 2. Section 2 of LB 991 directs that "a court or other authority shall consider" (emphasis added) fourteen enumerated factors in determining whether an object is drug paraphernalia. The Model Act directs that a court or other authority "should consider" (emphasis added) these factors
 
 
 [5]
 For example Section 1(4)(a-m) of LB 991 is similar to statutes in Geiger v. City of Eagan, supra, 618 F.2d at 28-29; Music Stop, Inc. v. City of Ferndale, supra, 488 F.Supp. at 391; Record Museum v. Lawrence Township, supra, 481 F.Supp. at 771; Smith v. Roark, supra, slip op. at 4-5
 
 
 [6]
 We have considered, however, whether the branch of abstention doctrine elaborated in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), requires abstention. We conclude that it does not. See generally Coley v. Clinton, 635 F.2d 1364, 1373 (8th Cir. 1980), and George v. Parratt, 602 F.2d 818 (8th Cir. 1979)
 A number of courts have considered whether the constitutional questions presented by the Model Act could be obviated by state court interpretations. Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916, 925-26 (6th Cir. 1980), vacated and remanded, --- U.S. ----, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981); Mid-Atlantic Accessories Trade Association v. Md., 500 F.Supp. 834, 841 (D.Md.1980); cf. High Ol' Times, Inc. v. Busbee, 621 F.2d 135, 141 (5th Cir. 1980) (district court held to have abused its discretion in abstaining from decision in challenge to statute similar to Model Act); Record Head Inc. v. Olson, 476 F.Supp. 366 (D.N.D.1979) (abstention not appropriate in challenge to statute similar to Model Act). We concur in the reasoning of these cases, which hold that abstention is inappropriate where, as here, construction by the state courts would not significantly alter the federal constitutional issue. Railroad Commission v. Pullman Co., supra, 312 U.S. at 498, 61 S.Ct. at 644. Although state court construction might eliminate or narrow certain issues of vagueness, it would not eliminate the first and fourth amendment issues before the court.
 Moreover, since this is not a case which raises difficult or obscure state law questions, the second factor cited in Pullman as supportive of abstention is absent here. Id. at 499, 61 S.Ct. at 644. Abstention is the exception rather than the rule, Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), and should not be applied here to deprive appellants of their chosen federal forum.
 
 
 [7]
 Cases holding the Model Act or a modified version of the Model Act not vague or overbroad include Tobacco Accessories & Novelty Craftsmen Merchants Ass'n v. Treen, 501 F.Supp. 168 (E.D.La.1980); Mid-Atlantic Accessories Trade Ass'n v. Md., supra, 500 F.Supp. 834; Delaware Accessories Trade Ass'n v. Gebelein, 497 F.Supp. 289 (D.Del.1980); World Imports, Inc. v. Woodbridge Township, 493 F.Supp. 428 (D.N.J.1980); New England Accessories Trade Association, Inc. v. City of Nashua, Civ.No. 80-530-D (D.N.H. Dec. 8, 1980); Florida Businessmen for Free Enterprise v. City of Hollywood, No. 80-6157-Civ-HCR (S.D.Fla. Aug. 29, 1980)
 Cf. cases upholding legislation based on the Model Act after severing portions thought to be impermissibly vague or overbroad. Florida Businessmen for Free Enterprise v. Fla., supra, 499 F.Supp. 346 (offense of possession, without mens rea of intent, severed as unconstitutional); New England Accessories Trade Ass'n v. Browne, 502 F.Supp. 1245 (D.Conn.1980) ("reasonably should know" standard severed).
 But see cases holding that particular phrases in the Model Act are impermissibly vague, and that the entire legislation is infected by the vague portions. Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d 916; Lazy J., Ltd. v. Borough of State College, Civ.No. 80-1167 (M.D.Pa. Jan. 30, 1981); Back Door Records v. City of Jacksonville, 515 F.Supp. 857 (E.D.Ark. 1981); General Stores, Inc. v. City of Albuquerque, No. 81-0027-M, Civil (D.N.Mex. March 23, 1981) (modified version of Model Act); Weiler v. Carpenter, 507 F.Supp. 837 (D.N.Mex.1981); Brache v. County of Westchester, 507 F.Supp. 566 (S.D.N.Y.1981) (modified version of Model Act); Indiana Chapter, N.O.R.M.L. v. Sendak, supra, No. TH 75-142-C (S.D.Ind. Feb. 4, 1980) (modified version of Model Act).
 
 
 [8]
 This standard is set forth more fully in Grayned v. City of Rockford, supra, 408 U.S. at 108-09, 92 S.Ct. at 2298-99 (footnotes omitted):
 Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.
 See also Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).
 
 
 [9]
 While we find the intent requirement of the Nebraska ordinance constitutional, we note the greater clarity of an Indiana statute approved in Nova Records, Inc. v. Sendak, 504 F.Supp. 938, 940-41 (S.D.Ind.1980). The Indiana statute does not provide a laundry list of objects which, coupled with the requisite intent, constitute drug paraphernalia. Id. at 944. Rather, the statute utilizes specific intent only in defining the statutory offenses. The offenses of manufacture or design, delivery, and possession are each separately defined, along with the intent relevant to each
 
 
 [10]
 We conclude, for reasons amply spelled out by the Sixth Circuit in Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 932, that the listed items are exemplary only and are not irrebuttably presumed to be drug paraphernalia
 
 
 [11]
 For example, Section 2(3) provides that authorities shall consider "(t) he proximity of the object to any controlled substance." Thus the proximity of marijuana in the hands of smokers outside of a store to roach clips inside the store might be considered as one factor in assessing whether the clips were intended as drug paraphernalia by the store owner. See also Section 2(1), (4), (5), and (6)
 
 
 [12]
 In the context of an alleged sale or delivery of drug paraphernalia, the Act requires the state to prove both (1) that the defendant intended that an item would be used for the production or consumption of controlled substances and also (2) that he either knew, or that he acted in a set of circumstances from which a reasonable person would know, that the buyer of the item would thereafter use it for those purposes. So-called constructive knowledge thus has significance only in a situation where the defendant is selling or delivering items that he intends to be used to produce or consume illicit drugs in the first place. The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible, as plaintiffs would suggest, for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue
 
 
 [497]
 F.Supp. at 294
 
 
 [13]
 8 U.S.C. § 1185(a)(2); 15 U.S.C. §§ 78dd-1, 78dd-2, 1397, 1916, 2068, 2614; 18 U.S.C. §§ 491, 922, 954, 1384, 2154, 2423, 2512; 26 U.S.C. § 999; 42 U.S.C. §§ 263j, 5409; 46 U.S.C. § 1461
 
 
 [14]
 Finally, we address appellants' overbreadth argument to the effect that the statute sweeps innocent items within its ambit. This is merely a species of the vagueness argument. Given the requirement of intent, no innocent item will be impermissibly brought within the state's control
 
 
 [15]
 Appellants also object to certain sections of Neb.Rev.Stat. § 28-431 (Supp.1978) which predate LB 991, particularly subsections (1)(b), (1)(d) and (2) of Section 28-431. These subsections allow the warrantless seizure of "raw materials, products, and equipment ... used, or intended for use, in manufacturing ... or administering ... any controlled substance" (Section (1) (b)), and of "conveyances ... used, or intended for use, in transporting any controlled substance" (Section 1(d))
 We decline to reach these provisions of § 28-431 for several reasons. First, appellants' complaint in district court seeking injunctive and declaratory relief was addressed to "Sections 28-101 and 28-431 as amended by LB 991 " (emphasis added). The complaint was not addressed to those portions of Neb.Rev.Stat. § 28-431 which predate the amendments. The district court's memorandum opinion did not consider statutory material outside of the amendments made by LB 991.
 Secondly, were we to consider statutory material beyond that added by LB 991, we would necessarily be confronted by unsettled and unclear issues of state law. There is room for doubt as to whether the "equipment" subject to forfeiture under subsection (1)(b) of Neb.Rev.Stat. § 28-431 (Supp.1978) includes drug paraphernalia as defined by LB 991. Arguably it does not, since LB 991 makes separate provision for the civil forfeiture of drug paraphernalia. In any case, under the doctrine of abstention articulated in Railroad Comm'n v. Pullman Co., supra, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, we would decline to reach constitutional issues involved in subsections (1)(b) and (1)(d) and (2) of Neb.Rev.Stat. § 28-431 (Supp.1978).
 
 
 [16]
 Neb.Rev.Stat. § 28-4, 135 (1943)
 
 
 [17]
 When "conveyances" are seized, Nebraska law provides a strict time limit for the filing of a complaint for condemnation by law enforcement personnel. See Neb.Rev.Stat. § 28-431(4) (Supp.1978). This time limit allows the forfeiture provision to satisfy procedural due process. State v. One 1970 2-Door Sedan Rambler (Gremlin), supra, 215 N.W.2d at 851
 The time limit applicable to "conveyances" arguably does not apply to require the filing of a complaint when drug paraphernalia is seized. However, appellants have not raised or briefed the issue of their due process rights to post-seizure procedural safeguards. On the record before us, we hold only that procedural due process is not violated by the provisions for seizure of drug paraphernalia without opportunity for prior hearing. Calero-Toledo v. Pearson Yacht Leasing Co., supra, 416 U.S. 678-80, 94 S.Ct. 2089-90.
 
 
 [18]
 See also Farber, Commercial Speech and First Amendment Theory, 74 Nw.U.L.Rev. 372, 389-90 & nn. 75-77 (1979); Jackson & Jeffries, Commercial Speech: Economic Due Process and the First Amendment, 65 Va.L.Rev. 1, 14-25 (1979); Comment, First Amendment Protection for Commercial Advertising: The New Constitutional Doctrine, 44 U.Chi.L.Rev. 205 (1976)
 
 
 [19]
 We do not decide whether the Nebraska statute is infirm on the ground of "geographical overbreadth," that is, on the ground that Section 6 could be enforced against advertisers in neighboring states where drug paraphernalia is not banned. Out-of-state advertisers arguably have a first amendment right to make their wares known to Nebraska citizens. Bigelow v. Virginia, supra, 421 U.S. 809, 824-25, 95 S.Ct. 2222, 2234, 44 L.Ed.2d 600; but see Comment, First Amendment Protection for Commercial Advertising, supra, 44 U.Chi.L.Rev. at 214 n.61 (and citations therein)
 While there may be merit to the geographical overbreadth argument, see Record Revolution No. 6, Inc. v. City of Parma, supra, 638 F.2d at 937, this is not an appropriate case in which to consider the interests of out-of-state merchants. The interests of such advertisers are wholly unrepresented in this suit. The Nebraska Civil Liberties Union represents only its Nebraska members. Appellants have not argued first amendment issues on this appeal. If we were to consider the interests of out-of-state retailers, we would necessarily utilize the overbreadth doctrine to consider third parties who do not reside in the enforcing state, against whom enforcement may be problematic, and whose interests are raised only by an amicus party. We doubt that the overbreadth doctrine, construed as a rule of standing, see Turchick v. United States, supra, 561 F.2d at 722, can be extended so far. The Supreme Court has specifically noted that the overbreadth doctrine is, if anything, less applicable in a commercial speech context. Central Hudson Gas & Electric Corp. v. Public Service Comm'n, supra, 447 U.S. at 564, 565 nn. 6-8, 100 S.Ct. at 2350, 2351; Bates v. State Bar, 433 U.S. 350, 381, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977).
 
 
 [20]
 As a final note we observe that after the text of this opinion was prepared but before it could be published, the Tenth Circuit in Hejira Corp. v. MacFarlane, 660 F.2d 1356 (10th Cir. 1981), undertook to construe a Colorado statute similar to but not identical with the Model Act. We have reexamined our position in light of the view of the Tenth Circuit as expressed in Hejira and in doing so have found much that tends to support our decision here. In construing the Model Act, however, we do not find it necessary to conclude, as did the Tenth Circuit, that statutory standards set forth as guidelines for identifying drug paraphernalia are to be read as "a part of the definition of the crime." Id., at 1369